Vara 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-466-CV





JESUS ALBERTO VARA,



 APPELLANT


vs.






JOHN SHARP, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS;


DAN MORALES, ATTORNEY GENERAL OF THE STATE OF TEXAS; AND KAY


BAILEY HUTCHINSON, STATE TREASURER OF THE STATE OF TEXAS,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT



NO. 91-15577, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 





 The question presented by this appeal is whether evidence obtained from an
unconstitutional warrantless search may be used in a civil tax proceeding. Jesus Alberto Vara,
appellant, challenges a tax assessed against him under the Controlled Substances Tax Act. Tex.
Tax Code Ann. §§ 159.001-.301 (West 1992). The assessment was based on evidence obtained
from a warrantless search. Vara filed a refund suit against appellees John Sharp in his capacity
as Comptroller of Public Accounts, Attorney General Dan Morales, and former State Treasurer
Kay Bailey Hutchinson (collectively "the Comptroller"). Vara alleged that the exclusionary rule
prohibited the use of unconstitutionally seized evidence to support the assessment. The district
court granted summary judgment for the Comptroller. Vara appeals. We will reverse the
judgment of the district court.



BACKGROUND


 On October 11, 1990, two officers of the Dallas Police Department conducted a
warrantless search of Vara's truck and adjacent premises. The search yielded large quantities of
marihuana and cash. As a result, criminal proceedings against Vara were initiated in a Dallas
district court for possession of marihuana. Vara defended the criminal charges by moving to
suppress all evidence seized during the search, alleging that the search was unconstitutional under
the Fourth and Fourteenth Amendments of the United States Constitution and article I, section 9
of the Texas Constitution. The district court granted Vara's motion and ordered the evidence
suppressed. Because the state did not appeal the trial court's ruling, we must assume for purposes
of this opinion that the search conducted by the officers was unconstitutional.

 At the same time that criminal charges were brought against Vara, the state initiated
forfeiture proceedings against the cash seized during the search. However, after Vara's motion
to suppress was granted in the criminal proceeding, the state requested a nonsuit and dismissal of
the forfeiture suit. The trial court granted the state's motion.

 At some point during the course of Vara's criminal prosecution, the Dallas Police
Department notified the Comptroller that its officers had found Vara in possession of marihuana
lacking the tax certificates required by the Controlled Substances Tax Act. Based on this
information, the Comptroller assessed $20,329.54 in unpaid taxes against Vara.

 During the administrative hearing in which Vara contested the tax assessment, Vara
contended that no evidence existed to support the assessment other than the marihuana seized
pursuant to the unconstitutional search. Vara argued that this evidence should be excluded in the
administrative proceeding just as it had been in the criminal proceeding. The administrative law
judge, however, upheld the assessment, stating that he had no authority to address the
constitutional issues raised by Vara.

 Vara paid the tax under protest and filed suit for a refund of the tax, (1) again
contending that the exclusionary rule prevented the Comptroller from basing its assessment on the
evidence obtained from the warrantless search. Both Vara and the Comptroller filed motions for
summary judgment; the district court granted that of the Comptroller.

 Vara appeals, raising three points of error, all of which rest on his contention that
the exclusionary rule prohibits basing the tax assessment on the unconstitutionally obtained
evidence, thereby rendering section 159.101(i) of the Controlled Substances Tax Act
unconstitutional as applied in this case.



THE CONTROLLED SUBSTANCES TAX ACT


 The Controlled Substances Tax Act (hereinafter "the Act") imposes a weight-based
tax on controlled substances possessed by "dealers." Act § 159.101. (2) The Act defines dealers
as anyone possessing either seven grams or more of a controlled substance, or four ounces or
more of substances consisting of or containing marihuana. Act § 159.001(3). Upon payment of
the tax, dealers are to affix payment certificates to the controlled substance to evidence payment. 
Act § 159.102(a). 

 The Act provides that controlled substances lacking certificates are subject to
forfeiture to the state in the same manner as seized property is forfeited under the Alcoholic
Beverage Code. Act § 159.205(a). Proceeds from the collection of taxes, penalties, or interest
imposed by the Act are deposited in the state's general revenue fund. Fines collected pursuant
to prosecutions under section 159.201(b) of the Act, which makes it a third degree felony to
possess controlled substances lacking tax certificates, are "deposited to the credit of the county
treasury of the county in which the offense occurred." Act § 159.301.

 This Court has held that the Act "appears to be a tax on its face and operates as a
revenue-generating measure." Jackson v. Sharp, 846 S.W.2d 144, 146 (Tex. App.--Austin 1993,
no writ). Still, the Act only taxes individuals who are violating the law. Section 159.103, entitled
"Exemption," reads, "The purchase, acquisition, importation, or production of a taxable substance
is exempt from the tax imposed by this chapter if the activity is authorized by law." Act §
159.103 (emphasis added). The Act is also subordinate to the underlying criminal proceedings: 
"The right of the comptroller to collect the tax imposed by this chapter, including applicable
penalty and interest, is subordinate to the right of a federal, state, or local law enforcement
authority to seize, forfeit, and retain property under . . . any . . . criminal forfeiture law of this
state or of the United States." Act § 159.205(b). Furthermore, the Comptroller may only settle
a tax proceeding under the Act with the permission of the prosecutor of the underlying criminal
offense. (3) The prosecutor may also request that the administrative proceedings concerning the tax
be deferred, which the Comptroller may do if "in the best interest of the state." Act § 159.206(b).

 Central to this appeal is the constitutionality of section 159.101(i) of the Act, which
makes the suppression of evidence in the underlying criminal proceeding irrelevant to tax liability
under the Act:


 

The suppression of evidence on any ground in a criminal case that arises out of the
facts on which a determination is made under this chapter or the dismissal of
criminal charges in such a case does not affect a determination made under this
chapter. 



Act § 159.101(i) (emphasis added). Vara contends that this provision is unconstitutional because
it allows the Comptroller to use unconstitutionally seized evidence to assess taxes against Texas
citizens. Thus, the issue is whether the exclusionary rule applies, thereby rendering section
159.101(i) unconstitutional as applied in this case.


THE FOURTH AMENDMENT EXCLUSIONARY RULE


History of the Exclusionary Rule

 Under the exclusionary rule, unconstitutionally seized evidence may not be admitted
in a criminal proceeding. The federal exclusionary rule was first announced in Weeks v. United
States, 232 U.S. 383 (1914), in which the Supreme Court held that evidence seized by federal
agents in violation of the Fourth Amendment was not admissible in a federal criminal proceeding. (4) 
The Court also held that evidence illegally seized by state officers could be used in a federal
criminal proceeding, Weeks, 232 U.S. at 398, but later reversed itself, holding that evidence
illegally obtained by state officers was likewise excluded from federal criminal proceedings. 
Elkins v. United States, 364 U.S. 206 (1960).

 In the landmark case of Mapp v. Ohio, 367 U.S. 643 (1961), the Supreme Court
extended the exclusionary rule to state criminal proceedings. The Court reasoned that because
the Fourth Amendment's right to privacy applied to the states, (5) the exclusionary rule, which was
applied in federal criminal proceedings to protect a defendant's right to privacy, must likewise be
applied in state courts. "To hold otherwise is to grant the right [of privacy] but in reality to
withhold its privilege and enjoyment." Mapp, 367 U.S. at 656. The Court further explained that
"the purpose of the exclusionary rule `is to deter--to compel respect for the constitutional guaranty
in the only effectively available way--by removing the incentive to disregard it.'" Id. (quoting
Elkins v. United States, 364 U.S. at 217).

 In response to the argument that under the exclusionary rule "[t]he criminal is to
go free because the constable has blundered," (6) the Court stated that "there is another
consideration--the imperative of judicial integrity." Id. at 659 (quoting Elkins, 364 U.S. at 222). 
"Nothing can destroy a government more quickly than its failure to observe its own laws, or
worse, its disregard of the charter of its own existence." Id. Concluding, the Court explained
that its decision, "founded on reason and truth, gives to the individual no more than that which
the Constitution guarantees him, to the police officer no less than that to which honest law
enforcement is entitled, and, to the courts, that judicial integrity so necessary in the true
administration of justice." Id. at 660.

 While Mapp considered privacy, deterrence, and judicial integrity as justifications
for the exclusionary rule, in the thirty years since the decision, the Court has come to focus almost
exclusively on deterrence. The Supreme Court has declared that the primary purpose of the
exclusionary rule is to deter future unlawful police conduct, not to serve as a personal
constitutional right of the aggrieved party. United States v. Calandra, 414 U.S. 338, 347-48
(1974). The Court explained in Calandra that the exclusionary rule could not redress the
violations of search victims' privacy because "the ruptured privacy of the victims' homes and
effects cannot be restored." Id. at 347 (quoting Linkletter v. Walker, 381 U.S. 618, 637 (1965)). 
Furthermore, the Court has held that "the `imperative of judicial integrity' is not offended" by
permitting the admission of unconstitutionally obtained evidence if the police officers "reasonably
believed in good faith that their conduct was in accordance with the law." United States v.
Peltier, 422 U.S. 531, 537-38 (1975). Indeed, the Court has stated that "[w]hile courts, of
course, must ever be concerned with preserving the integrity of the judicial process, this concern
has limited force as a justification for the exclusion of highly probative evidence." Stone v.
Powell, 428 U.S. 465, 485 (1976).




The Exclusionary Rule in Civil Proceedings

 In Mapp v. Ohio, the Supreme Court did not address if and to what extent the
exclusionary rule applied in civil proceedings. (7) The Court spoke to this issue in United States v.
Janis, 428 U.S. 433 (1976). 

 In Janis, Los Angeles police officers searched the defendant's apartment for
bookmaking paraphernalia pursuant to a search warrant. The officers seized cash and wagering
records, and arrested the defendant. The police officers then notified the Internal Revenue Service
that the defendant had been arrested for bookmaking activities. After ascertaining that the
defendant had not filed wagering tax returns for his bookmaking enterprise, the IRS assessed back
wagering taxes against him. The IRS based the assessment exclusively upon the evidence obtained
by the Los Angeles police officers in their search of the defendant's apartment. The IRS then
levied upon the cash seized in the search in partial satisfaction of the assessment. Janis, 428 U.S.
at 434-37.

 Charges were filed against the defendant in state court for violation of state
gambling laws. The defendant moved to quash the search warrant, contending that the affidavit
supporting the warrant was insufficient. The state trial court found that the search had been
unconstitutional and granted the motion to suppress, ordering all of the defendant's property
returned to him except the money levied upon by the IRS. Id. at 437-38. The defendant then
filed a claim for refund of the cash levied upon by the IRS, to which the IRS responded with a
counterclaim for the unpaid balance of the assessment against Janis. In response to the IRS
counterclaim, the defendant argued that the unconstitutionally seized evidence should be
suppressed in the tax assessment proceeding.

 The Supreme Court viewed Janis as posing the following question: "Is evidence
seized by a state criminal law enforcement officer in good faith, but nonetheless
unconstitutionally, inadmissible in a civil proceeding by or against the United States?" Id. at 434
(emphasis added). The Court answered no, after weighing the likely social benefits of applying
the exclusionary rule against the cost of excluding the evidence. Id. at 454. The Court concluded
that "exclusion from federal civil proceedings of evidence unlawfully seized by a state criminal
enforcement officer has not been shown to have a sufficient likelihood of deterring the conduct
of the state police so that it outweighs the societal costs imposed by the exclusionary rule." Id. 
The Court reasoned that the state officers, whose conduct would be the primary object of the
exclusionary rule if applied, were already sufficiently deterred by the exclusion of the evidence
from both state and federal criminal proceedings: "[T]he entire criminal enforcement process,
which is the concern and duty of these officers, is frustrated." Id. at 448. The Court also cited
the lack of empirical evidence of the deterrent effect of the exclusionary rule. Id. at 452-53.

 The Court also drew a distinction between intersovereign and intrasovereign uses
of unconstitutionally seized evidence in civil proceedings. Intrasovereign cases are those where
the officer that conducted the unconstitutional search is an agent of the same sovereign that seeks
to use the evidence in a civil proceeding. Intersovereign cases are those where the evidence is
seized by one sovereign's agents, and used in another sovereign's proceedings. Id. at 455. The
Court explained that "[t]he seminal cases that apply the exclusionary rule to a civil proceeding
involve `intrasovereign' violations," which was not the type of violation before the Court. Id.
at 456.

 In a more recent decision, the Supreme Court applied the balancing test set forth
in Janis and concluded that evidence obtained from an unlawful, warrantless arrest conducted by
INS agents could be used in a civil deportation proceeding. Immigration & Naturalization Serv.
v. Lopez-Mendoza, 468 U.S. 1032 (1984). The Court explained that "[w]hile it seems likely that
the deterrence value of applying the exclusionary rule in deportation proceedings would be higher
than it was in Janis, it is also quite clear that the social costs would be very much greater as
well." Lopez-Mendoza, 468 U.S. at 1042.

 Lower federal courts have elaborated on the Janis balancing test. Most notably,
in Wolf v. Commissioner, 13 F.3d 189 (6th Cir. 1993), the Sixth Circuit Court of Appeals
considered whether cash, cocaine, and marijuana seized by federal agents could be used in the
defendant's federal tax proceeding. The Sixth Circuit set forth five factors it concluded were
relevant to determining whether the exclusionary rule should be applied in a particular civil
proceeding:



(1) the nature of the proceeding;


(2) whether the proposed use of unconstitutionally seized material is
intersovereign or intrasovereign;


(3) whether the search and the secondary proceeding were initiated by the same
agency;


(4) whether there is an explicit and demonstrable understanding between the two
governmental agencies; and


(5) whether the secondary proceeding fell within the "zone of primary interest"
of the officers that conducted the search.



Wolf, 13 F.3d at 194-95. Considering the above factors, the Sixth Circuit refused to apply the
exclusionary rule to a federal tax proceeding. Among other things, the court of appeals noted that
"the civil tax proceedings were designed to subject Wolf to the same tax requirements to which
all citizens are subject, whether their income derives from legitimate or illegitimate sources." Id.
at 195. With this federal case law in mind, we will determine whether the Fourth Amendment
exclusionary rule ought to be applied in the instant case.



APPLICABILITY OF THE FOURTH AMENDMENT EXCLUSIONARY RULE TO


SECTION 159.101(i) OF THE CONTROLLED SUBSTANCES TAX ACT


 At the outset, we decline to adopt the rule advocated by Vara, that the exclusionary
rule should always be applied when the search and secondary proceedings are conducted by the
same sovereign. Such a blanket application of the exclusionary rule to all intrasovereign cases
would sweep too broadly, not consistently achieving further deterrence. See Tirado v.
Commissioner, 689 F.2d 307, 313 (2d Cir. 1982), cert. denied, 460 U.S. 1014 (1983) ("It would
be unsound to invoke the exclusionary rule on the assumption that officers of one federal agency
have such a strong motivating interest in all federal law enforcement concerns that broad
application of the rule will achieve significant marginal deterrence."). 

 Instead, pursuant to Janis, we must determine whether the benefit of achieving
additional deterrence by applying the exclusionary rule in the instant case outweighs the societal
costs imposed by the exclusion of critical evidence. In making this determination, we will apply
the test set forth by the Sixth Circuit in Wolf. However, we will consider as an additional factor
the nature of the search. This is a consideration well ingrained in Fourth Amendment
jurisprudence; the United States Supreme Court has recognized that the flagrancy of the
constitutional violation is relevant to the potential deterrent effect of suppressing unconstitutionally
obtained evidence. See, e.g., United States v. Leon, 468 U.S. 897, 920-21 (1984) ("[W]hen an
officer acting with objective good faith has obtained a search warrant . . . and acted within its
scope . . . . there is no police illegality and thus nothing to deter."); Michigan v. Tucker, 417
U.S. 433, 447 (1974) ("Where the official action was pursued in complete good faith, . . . the
deterrence rationale loses much of its force."). We now turn to applying these factors to the facts
of this case.



a. The nature of the search

 Here, the evidence sought to be excluded was obtained during a warrantless search. 
Furthermore, the trial court in the criminal proceeding found that no exceptions to the warrant
requirement were present. This differs from Janis, Wolf, and Tirado, in which the evidence
sought to be excluded was obtained from searches conducted pursuant to search warrants. Janis,
428 U.S. at 437-38; Wolf, 13 F.3d at 191; Tirado, 689 F.2d at 308. Vara contends that the
absence of a warrant weighs in favor of applying the exclusionary rule.



b. The nature of the proceeding

 The proceeding in the instant case is on its face a civil proceeding; it is an
administrative hearing to determine tax liability under the Controlled Substances Tax Act. "[I]t
is generally unlikely that application of the exclusionary rule to bar the evidence in a secondary
civil proceeding will deter future Fourth Amendment violations." Wolf, 13 F.3d at 194. On the
other hand, the exclusionary rule has been applied in civil forfeiture proceedings because of their
"quasi-criminal" nature. One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693 (1965). 
Furthermore, because of their quasi-criminal nature, the Supreme Court has held that certain
constitutional protections normally reserved for criminal proceedings apply. Austin v. United
States, 113 S. Ct. 2801 (1993). In Austin, the Supreme Court held that forfeiture proceedings
"historically have been understood, at least in part, as punishment," and were therefore subject
to the limitations of the Eighth Amendment's excessive fines clause. Austin, 113 S. Ct. at 2810.

 The Act under which the administrative proceeding was conducted is a tax statute. 
Accordingly, the Comptroller argues that its purpose is to collect revenue for the state. However,
a tax statute may also be penal in nature. Indeed, this Court noted that the Act "may also have
been intended to deter the possession or distribution of illegal drugs or to make lawbreaking less
profitable." Jackson, 846 S.W.2d at 146. More importantly, unlike the taxes considered in Wolf
and Tirado, the Act taxes only criminal activity. The United States Supreme Court recently
recognized the importance of this distinction. Department of Revenue v. Kurth Ranch, 62
U.S.L.W. 4429 (U.S. June 6, 1994) (holding that imposition of tax on controlled substances,
similar to the Texas Act, constituted double jeopardy when imposed after also imposing a criminal
penalty). (8) In Kurth Ranch, the Supreme Court observed, "Taxes imposed upon illegal activities
are fundamentally different from taxes with a pure revenue-raising purpose that are imposed
despite their adverse effect on the taxed activity. But they differ as well from mixed-motive taxes
that governments impose both to deter a disfavored activity and to raise money." Kurth Ranch,
62 U.S.L.W. at 4434. The Court explained that while sin taxes discourage the use of a taxed
product, the government continues to allow the manufacture and sale of the product, having
reasoned that the benefits of increased revenue and employment from the sale and manufacture
of the product outweigh the societal costs incurred from its continued use. Id. "These
justifications vanish when the taxed activity is completely forbidden, for the legitimate revenue-raising purpose that might support such a tax could be equally well served by increasing the fine
imposed upon conviction." Id.



c. Whether the proposed use of unconstitutionally seized material is intersovereign or
intrasovereign

 This case presents an intrasovereign use of unconstitutionally seized evidence; the
evidence was unconstitutionally seized by an arm of the State of Texas, the Dallas Police
Department, and the Comptroller, also an agent of the State of Texas, sought to use it as the basis
for assessing taxes. Vara argues that this factor favors application of the exclusionary rule, and
indeed, urges that the exclusionary rule should always be applied in intrasovereign cases.

 The United States Supreme Court reiterated the importance of the intersovereign-intrasovereign distinction in Kurth Ranch when considering a Montana statute similar to the Act
at issue here: "In this case, it is significant that the same sovereign that criminalized the activity
also imposed the tax. Contrarily, most of our cases confirming that the unlawfulness of an
activity does not prevent its taxation involve taxes on acts prohibited by other sovereigns." Kurth
Ranch, 62 U.S.L.W. at 4434 n.22. This distinction was a factor in the Court's holding that the
constitutional protection against double jeopardy applied to the Montana statute, even though the
Montana statute was designated as a tax.



d. Whether the search and the secondary proceeding were initiated by the same agency

 The search of Vara and the secondary administrative proceeding were not initiated
by the same agency. Officers of the Dallas Police Department conducted the search and notified
the Comptroller that Vara possessed marihuana that lacked tax certificates, and the Comptroller
assessed the tax and initiated administrative proceedings. The Comptroller correctly argues that
this factor weighs against application of the exclusionary rule.



e. Whether there is an explicit and demonstrable understanding between the two governmental
agencies

 The Sixth Circuit explained that in determining whether "there is an explicit and
demonstrable understanding between the two governmental agencies," a court may consider "the
existence of a statutory regime" that establishes a relationship between the two governmental
agencies. Wolf, 13 F.3d at 195. Vara points to several provisions of the Act that provide an
explicit link between the comptroller and the law enforcement agencies investigating the
underlying criminal activity: collection of taxes under the Act is subordinated to seizures by law
enforcement agencies investigating the underlying criminal proceedings; the Comptroller may only
settle a tax assessment with permission of the prosecutor; and the prosecutor may request that the
tax proceedings be deferred. We note, however, that the record does not indicate that the Dallas
Police Department exercised any of these powers under the Act.


f. Whether the secondary proceeding fell within the "zone of primary interest" of the officers
that conducted the search

 "Where the relationship between the objectives of the law enforcement agency to
which the officer belongs and the secondary proceedings is close, an inference may be drawn that
the officers had the use of the evidence in the subsequent proceedings in mind when they made
the seizure." Wolf, 13 F.3d at 195. The Comptroller points to the fact that an officer on the beat
is concerned not with the collection of revenue for the state, but with ridding our streets of
criminal activity. This weighs against application of the exclusionary rule. On the other hand,
the Act is only aimed at illegal activity. Vara contends that this indicates that the provisions of
the Act come within the officers' "zone of primary interest," namely, curtailing illegal conduct.

 Furthermore, while not pursued against him, Vara points out that the Act makes
possession of a controlled substance lacking a tax certificate a third degree felony. Revenue from
fines administered for this violation are credited to the budget of the county where the offense
occurred. To the degree that local law enforcement agencies depend on county funding, their
officers would have an interest in securing prosecutions under the Act. 

 Having considered the aforementioned factors, we conclude that additional
deterrence would be achieved by applying the exclusionary rule in this case. Among the specific
factors that weigh heavily in our decision are the statutory links between law enforcement and the
Comptroller provided for in the Act, that the evidence was obtained from a warrantless search,
and that the Act only taxes illegal conduct. Accordingly, we hold that the exclusionary rule
applies to this proceeding. Because section 159.101(i) prohibits application of the exclusionary
rule, section 159.101(i) as applied in this case violates the United States Constitution.



ARTICLE I, SECTION 9 OF THE TEXAS CONSTITUTION AND


SECTION 159.101(i) OF THE CONTROLLED SUBSTANCE TAX ACT


 Vara also argues that section 159.101(i) of the Act violates article I, section 9 of
the Texas Constitution. We agree. As an alternative basis for our holding, we conclude that even
if the United States Constitution did not mandate application of the exclusionary rule in this case,
the Texas Constitution does. While the United States Supreme Court has all but abandoned the
right of privacy as a justification for the exclusionary rule under the federal constitution, privacy
has added potency under the Texas Constitution.

 Article I, section 9 of the Texas Constitution "guarantee[s] the sanctity of the
individual's home and person against unreasonable intrusion." State Employment Union v. Texas
Dep't of Mental Health & Mental Retardation, 746 S.W.2d 203, 205 (Tex. 1987). It is one of
several provisions of the Texas Constitution that create protected "zones of privacy." Id. "This
right to privacy should yield only when the government can demonstrate that an intrusion is
reasonably warranted for the achievement of a compelling governmental objective that can be
achieved by no less intrusive, more reasonable means." Id. The right of privacy under Texas law
has been referred to as "the right of personal freedom." Austin & Northwestern R.R. v. Cluck,
77 S.W. 403, 407 (Tex. 1903) (holding that district court had no authority to order plaintiff in
personal injury suit to submit to physical examination). The Texas Supreme Court observed in
Cluck, "In this state, by our Constitution and the common law, the person of a citizen is so sacred
that an officer may not disregard the right of personal freedom even to satisfy an execution by
levying upon property which is on the person of the defendant." Id.

 Furthermore, the Court of Criminal Appeals has made it clear that Texas courts
will not be bound by Supreme Court decisions construing the Fourth Amendment when
interpreting article I, section 9. Heitman v. State, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991). 
More recently, the Court of Criminal Appeals held that the Texas Constitution's definition of what
constitutes a search is broader than the definition under the United States Constitution. 
Richardson v. State, 865 S.W.2d 944 (Tex. Crim. App. 1993). (9) The Richardson decision is just
the latest of many recent decisions from Texas courts that have construed provisions of the Texas
Constitution as providing greater protections than analogous provisions of the federal constitution. 
See, e.g., Ex parte Tucci, 859 S.W.2d 1, 2 (Tex. 1993); Davenport v. Garcia, 834 S.W.2d 4
(Tex. 1992); Del Valle Indep. Sch. Dist. v. Lopez, 863 S.W.2d 507 (Tex. App.--Austin 1993, writ
denied). 

 The expanded privacy rights of Texas citizens support a broader application of the
exclusionary rule under the Texas Constitution than that required by the United States
Constitution. Accordingly, deterrence is not the primary focus for determining when to apply the
exclusionary rule under the Texas Constitution. In the instant case, the police officers made no
effort to obtain a search warrant, the procedural requirement demanded of law enforcement so that
our citizens' privacy rights are not violated without probable cause. Based on this and the other
factors previously considered in the context of our application of the Fourth Amendment
exclusionary rule, we hold that even if the Fourth Amendment does not require application of the
exclusionary rule in this case, it is required by the Texas Constitution.



CONCLUSION


 Having held that the exclusionary rule applies in this case, thereby rendering
section 159.101(i) unconstitutional as applied, we sustain Vara's third point of error. Because of
our disposition of point three, we need not address points one and two. We reverse the judgment
of the district court, and remand the cause for further proceedings consistent with this opinion.



 Mack Kidd, Justice

Before Justices Jones, Kidd and B. A. Smith

Reversed and Remanded

Filed: July 6, 1994

Publish
1.   See Tex. Tax Code Ann. § 112.051 (West 1992) (conditioning right to file suit attacking
legality of tax assessment on payment of tax). The Supreme Court of Texas has recently held that
to the degree this provision precludes a taxpayer from obtaining judicial review of tax liability by
means of a declaratory action, the provision is unconstitutional and void, violating the open courts
provision of the Texas Constitution. R Communications, Inc. v. Sharp, 37 Tex. Sup. Ct. J. 727
(Apr. 28, 1994).
2. [2]  The Act alternatively taxes by dosage those controlled substances that are not typically sold
by weight. Act § 159.101(b)(3). 
3. [3]  Section 159.206(a) of the Act provides:


(a) The comptroller may settle or compromise a tax, penalty, or interest imposed
under this chapter only if:


 (1) the prosecutor of a criminal offense under this chapter or of another
offense arising out of the same incident or transaction requests in writing
that the comptroller settle or compromise and specifies the reasons for
the request; and


 (2) the comptroller determines that the settlement or compromise is in the
best interest of the state.


Act § 159.206(a).
4. [4]  The Supreme Court had earlier applied the exclusionary rule as flowing from both the
Fourth Amendment, and the Fifth Amendment right against self-incrimination. Boyd v. United
States, 116 U.S. 616 (1886). The Court noted that "we have been unable to perceive that the
seizure of a man's private books and papers to be used in evidence against him is substantially
different from compelling him to be a witness against himself." Id. at 633.
5. [5]  The Supreme Court had so held in Wolf v. Colorado, 338 U.S. 25 (1949).
6. [6]  Justice (then Judge) Cardozo made this argument when refusing to adopt the exclusionary
rule in New York. People v. Defore, 150 N.E. 585, 587 (N.Y. 1926) (quoted in Mapp, 367 U.S.
at 659).
7. [7]  At least one lower court had held that the exclusionary rule could apply in civil cases under
certain circumstances. See Pizzarello v. United States, 408 F.2d 579 (2d Cir.), cert. denied, 396
U.S. 986 (1969) (holding that I.R.S. could not use evidence illegally seized by its agents in civil
tax proceeding). 
8. [8]  We note that no double jeopardy problem is posed in the instant case because the criminal
charges against Vara were dropped.
9. [9]  In Richardson, the Court of Criminal Appeals held that "the use of a pen register may well
constitute a `search' under Article I, § 9 of the Texas Constitution," and remanded the case to
determine whether such a search would be "unreasonable." Richardson, 865 S.W.2d at 953-54. 
In contrast, the court noted that installation and use of a pen register does not constitute a search
under the Fourth Amendment to the United States Constitution. Id. at 949 (citing Smith v.
Maryland, 442 U.S. 735 (1979)).