STATE of Indiana, INDIANA DEPARTMENT OF REVENUE, Appellant (Respondent below),

v.

Dante ADAMS, Appellee (Petitioner below).

### No. 49S10–0011–TA–628.

Supreme Court of Indiana.

Feb. 8, 2002.

Karen Freeman–Wilson, Attorney General of Indiana, David A. Arthur, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Robert W. Hammerle, Joseph M. Cleary, Hammerle Foster Allen & Long Sharp, Indianapolis, IN, Attorneys for Appellee.

## ON PETITION FOR REVIEW

SULLIVAN, Justice.

This is the first of two cases we decide today involving Dante Adams's difficulties with state revenue and criminal authorities after cocaine was discovered first in his safe deposit box and later in his home. This case presents the question of whether the cocaine found in an unconstitutional search of the safe deposit box by criminal authorities can be used by revenue authorities to make a tax assessment. We conclude that although the exclusionary rule bars the use of the cocaine as evidence in criminal proceedings, the exclusionary rule does not apply to tax assessment proceedings.

### Background

On August 7, 1997, employees of an Indianapolis bank informed a police officer that an odor of marijuana emanated from a safe deposit box leased to Defendant Dante Adams. The officer obtained a search warrant based on this tip. The police then searched the safe deposit box and found cocaine. Defendant was charged with Dealing in Cocaine and Possession of Cocaine. Defendant then filed a motion to suppress the cocaine, arguing that the information on which the warrant was based was stale. At a suppression hearing, the officer testified that the informants had waited weeks to tell the police about the smell. The trial court concluded that the information in the warrant was stale and granted the motion to suppress on March 18, 1998. The State voluntarily withdrew the charges against Defendant on March 24.

On March 23—a day before the criminal charges were dropped—the Indiana Department of Revenue ("the Department") issued an assessment pursuant to the Controlled Substance Excise Tax ("CSET")[1] against Defendant. Adams sought to have the cocaine suppressed in the CSET proceedings. The Department declined, but the Tax Court reversed and held that the exclusionary rule applied to CSET assessments. It therefore ordered the cocaine to be suppressed and vacated the CSET assessment. *See Adams v. Dep't of Revenue*, 730 N.E.2d 840, 843–44 (Ind. Tax Ct.2000). We granted review and now reverse the Tax Court.

### Discussion

■ Both parties concede that the search of the safe deposit box violated Adams's federal constitutional right to be free from unreasonable searches and seizures. Adams contends that the State could not assess the CSET because the cocaine on which the assessment was

---

1. Ind.Code § 6–7–3–13 (1998). The CSET is a tax on the possession of certain narcotics.

We discuss the tax and the procedures for collecting it in greater detail *infra*.

based was discovered during an illegal search. We therefore must determine whether the cocaine should be suppressed in the CSET proceedings under the federal exclusionary rule.

In a companion case today,[2] we conclude that a later, separate search of Adams's home was unconstitutional. For purposes of a criminal case, this conclusion ends the inquiry, as illegally obtained evidence may not be used in criminal proceedings. *See Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). However, "[t]he fact that evidence was seized in violation of the Fourth Amendment does not mean that it will be suppressed for every purpose in every proceeding." *Tirado v. Comm'r of Internal Revenue*, 689 F.2d 307, 310 (2d Cir.1982), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). In this case, we must determine whether the fruits of a different search— that of the safe deposit box—should have been excluded in the tax collection proceedings. We are operating not only in a different context (tax versus criminal) but are analyzing different searches (the search of the safe deposit box versus the search of Adams's home). Therefore, our conclusion in the companion case that the State could not introduce in a criminal proceeding evidence obtained from an illegal search of Adams's home does not affect our analysis in this case as to whether the illegal search of the safe deposit box should lead to exclusion of evidence in the CSET proceeding.

■■■■ The United States Supreme Court has held that the exclusionary rule is not constitutionally mandated, but is "a judicially created means of deterring illegal searches and seizures." *Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). *See also Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ("The rule is calculated to prevent, not to repair. Its purpose is to deter . . . . by removing the incentive to disregard it.").[3] Because the exclusionary rule is a judicially-created prophylactic device, the rule applies only "to those areas where its remedial objectives are thought most efficaciously served." *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1973). The Court has concluded that the rule is most effective when "its deterrence benefits outweigh its 'substantial social costs.'" *Scott*, 524 U.S. at 363, 118 S.Ct. 2014 (quoting *United States v. Leon*, 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). *See also I.N.S. v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984); *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).

Our analysis of both the deterrence produced and the costs incurred in the context of CSET assessments leads us to conclude that the exclusionary rule should not apply.

As the facts of this case show, both police and revenue officers are involved in enforcing the CSET: Police investigations uncover illegal narcotics, while the Department's revenue officers must collect CSET assessments on those narcotics. We do not believe that applying the exclusionary rule in CSET assessment proceedings will serve to deter either police or revenue

---

**2.** *Adams v. State*, No. 49S04–0011–CR–627, 762 N.E.2d 737, 2002 WL 207501 (Ind. Feb.8, 2002).

**3.** Adams does not argue that the Indiana Constitution mandates an exclusionary rule that is distinct from that imposed under federal case law. Therefore we need not address whether values other than deterrence might motivate the suppression of evidence under an *Indiana* exclusionary rule.

officers from making illegal searches or seizures.

The police will not be significantly deterred by the prospect of the exclusion of evidence in CSET proceedings because their primary concern is criminal prosecutions, where the exclusionary rule already applies. "Where evidence is obtained in an allegedly illegal search in furtherance of a criminal investigation, it is generally unlikely that application of the exclusionary rule to bar the evidence in a secondary civil proceeding will deter future Fourth Amendment violations." *Wolf v. Comm'r of Internal Revenue*, 13 F.3d 189, 194 (6th Cir.1993) (declining to apply the exclusionary rule to tax collection proceedings after evidence was illegally seized in narcotics investigation). The Supreme Court has concluded that government agents will be deterred when the conduct at issue falls "within the offending officer's zone of primary interest." *Janis*, 428 U.S. at 458, 96 S.Ct. 3021. *See also Scott*, 524 U.S. at 364, 118 S.Ct. 2014. The police's primary concern is the enforcement of the State's criminal laws, not its tax code.[4] The CSET is simply not so interrelated with "the often competitive enterprise of ferreting out crime" to warrant an extension of the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 978, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

We acknowledge some deterrence of revenue officers if the exclusionary rule is applied to CSET proceedings but we think these circumstances will be infrequent. In the companion case, we hold that CSET levies will generally be reasonable for Fourth Amendment purposes. *Adams v. State*, 762 N.E.2d at 743. The companion case invalidates searches by revenue officers only where the officers rely solely on a jeopardy warrant issued under Indiana Code § 6–7–3–13's provisions that allow the Department to issue jeopardy warrants without any standards or showing of exigency. *Id.* However, most jeopardy warrants are not issued under that code section. Instead, they are issued under Ind.Code § 6–8.1–5–3. *Id.* As such, the Department will be able to issue jeopardy warrants and levy on CSET assessments in most circumstances without violating the Fourth Amendment. Because levies by the Department will only violate the Fourth Amendment in certain narrow circumstances, application of the rule will not produce any significant deterrence to unlawful conduct by revenue officers.

As to the costs, we believe that application of the exclusionary rule in CSET proceedings will serve to undermine several important State interests. First, application of the exclusionary rule will frustrate the State's ability to exercise its power to tax, which is a "power of the highest essential order." *Bryant v. State*, 660 N.E.2d 290, 310 (Ind.1995) (DeBruler, J.,

---

4.  As the Sixth Circuit put it in *Wolf:*

    The primary interest of law enforcement agents is the apprehension, incapacitation, punishment, and (formerly, at least) rehabilitation of criminals, as well as the possible deterrence of future criminals through the imposition of criminal sanctions. .... By contrast, such an agent may have little interest in subsequent civil proceedings. Where civil proceedings are brought, for example, to tax ill-gotten gains, such proceedings do little more than subject criminals to the same taxes that govern all citizens. Excluding illegally seized evidence from proceedings to enforce tax and regulatory regimes is unlikely to deter law enforcement officials from violating a suspect's Fourth Amendment rights.

    *Wolf*, 13 F.3d at 194 (footnote omitted). The facts of this case support this analysis, as the officers found the drugs in August of 1997 (R. at 140) but the Department did not issue a CSET assessment until March of 1998, when the evidence was suppressed in the criminal proceedings.

concurring in part and dissenting in part). This power undergirds all other governmental activity and without it the State could not function. Application of the exclusionary rule would inevitably enable some taxpayers to avoid paying their taxes: "Because the exclusionary rule precludes consideration of reliable, probative evidence, it imposes significant costs: It undeniably detracts from the truthfinding process and allows many .... to escape the consequences of their actions." *Scott,* 524 U.S. at 364, 118 S.Ct. 2014. This cost of lost evidence is even greater in CSET assessments than it is in criminal cases. If we were to suppress the drugs at issue in CSET proceedings, the tax cannot be assessed. Conversely, the prosecution of a criminal can often continue despite the suppression of evidence because the State will have other evidence on which it can obtain a conviction.

Second, we note that the Supreme Court cited the cost of lost evidence when it refused to apply the exclusionary rule to federal tax proceedings. *See United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). In *Janis,* state law enforcement officers conducted an illegal search and the IRS attempted to introduce evidence stemming from the search in federal civil tax proceedings. Even though the Court relied heavily on this inter-sovereign aspect of the case, it also concluded that the costs of exclusion would be high because "the enforcement of admittedly valid laws would be hampered by so extending the exclusionary rule, and, as is nearly always the case with the rule, concededly relevant and reliable evidence would be rendered unavailable." *Id.* at 447, 96 S.Ct. 3021.

Third, the Supreme Court has often analyzed the cost of the exclusionary rule in terms of the toll it could take on the proceedings in which it is invoked. *See*

*Scott,* 524 U.S. at 364, 118 S.Ct. 2014. ("Application of the exclusionary rule would both hinder the functioning of state parole systems and alter the traditionally flexible, administrative nature of parole revocation proceedings."); *Lopez–Mendoza,* 468 U.S. at 1048, 104 S.Ct. 3479 (refusing to apply exclusionary rule to deportation proceedings in part because "[t]he prospect of even occasional invocation of the exclusionary rule might significantly change and complicate the [informal] character of proceedings."). The Department collects the CSET in an administrative manner similar to the parole revocation hearings in *Scott* or the immigration proceedings in *Lopez–Mendoza. See* Ind. Code § 6–7–3–13. As in those contexts, incorporation of the exclusionary rule would require complicated legal determinations that would frustrate the purpose of such expedited proceedings.

Our conclusion is consistent with those reached by most of the courts that have addressed this issue. *See Wolf v. Comm'r of Internal Revenue,* 13 F.3d 189, 194 (6th Cir.1993); *Tirado v. Comm'r of Internal Revenue,* 689 F.2d 307, 314 (2d Cir.1982); *Kivela v. Dep't. of Treasury,* 449 Mich. 220, 536 N.W.2d 498 (1995). *But cf. Vara v. Sharp,* 880 S.W.2d 844 (Tex.App.1994). The Supreme Court has applied the rule in only one context outside of its general use in criminal trials. In *One 1958 Plymouth Sedan v. Pennsylvania,* the Court concluded that the exclusionary rule applied to civil forfeiture proceedings because such proceedings are "quasi-criminal" in nature. 380 U.S. 693, 700, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). While the CSET has some quasi-criminal aspects in that it taxes narcotics, it is not quasi-criminal in the same sense as civil forfeiture because it does not stem from the State's regulatory power, which is typically more coercive than the State's power to tax. That is to say, because the CSET is part of the

State's power of the purse, not its power of the sword, it is less punitive than civil forfeiture and *One 1958 Plymouth Sedan*'s reasoning does not necessarily apply.

In reaching its conclusion that the exclusionary rule applies to the CSET, the Court of Appeals expressed concerns that

> [I]f there were no Fourth Amendment protections when evidence was illegally obtained, the State would have the opportunity to take a second bite at the same apple: assuming evidence was illegally obtained and a criminal prosecution could not result, then IDR could still assess the CSET on all evidence that was illegally obtained. There must be some protection against this practice.

*Adams v. State*, 726 N.E.2d 390, 395 (Ind. Ct.App.2000).

Of course, this practice is possible in any of the civil contexts in which the United States Supreme Court has refused to apply the rule. *Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (allowing introduction of illegally obtained evidence at parole hearings), *I.N.S. v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (deportation hearings); *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1975) (tax hearings); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1973) (grand jury investigations). Moreover, the exclusionary rule *will* apply if police collude with revenue officials to subvert a taxpayer's Fourth Amendment rights. *See Kivela v. Dep't. of Treasury*, 449 Mich. 220, 226, 536 N.W.2d 498, 500 (1995). ("Unless there is collusion between the agency that performed the illegal search and the agency seeking to admit the incriminating evidence, the evidence is admissible."). There is no evidence in the record that suggests that revenue officers were involved in the search of Adam's safe deposit box, which is the only search at issue here.

Because we conclude that the costs of applying the exclusionary rule to the CSET outweigh its limited benefits in this context, we decline to apply the rule to the evidence seized from Adams's safe deposit box.

*Conclusion*

We reverse the Tax Court and remand for proceedings consistent with this opinion.

SHEPARD, C.J., and RUCKER, J., concur.

BOEHM, J. dissents with separate opinion in which DICKSON, J., concurs.

BOEHM, Justice, dissenting.

I respectfully dissent. The issue is whether the Fourth Amendment requires that evidence that was admittedly seized in violation of the Fourth Amendment and is inadmissible in a criminal prosecution must also be excluded in proceedings to assess Indiana's Controlled Substance Excise Tax (CSET).[1] Because the purpose of the exclusionary rule is to remove the incentive for unreasonable governmental invasions of citizens' privacy, the closer the responsibilities of the seizing authority are to the subject matter of the civil proceeding, the more persuasive the case for exclusion of unconstitutionally seized evidence. Here the seizing agency was the county sheriff's department and the civil proceeding was an assessment of a tax that is essentially punitive and whose collection augments local law enforcement funding. Under these circumstances, I believe both precedent

---

1. As the majority correctly notes, Adams does not argue that the search and seizure provision of the Indiana Constitution requires a different result. That issue is not before us.

and principle dictate that the Fourth Amendment precludes admission of the evidence in this case.

The Fourth Amendment to the United States Constitution preserves the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In *Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914), the United States Supreme Court held that evidence seized in violation of the Fourth Amendment is not admissible in a federal criminal proceeding. In *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Supreme Court made clear the same is true in state criminal proceedings. The Court has repeatedly explained that the rule protects all citizens by removing the incentive to conduct an unreasonable search. *Id.* at 656, 81 S.Ct. 1684. It does so at the cost of excluding otherwise highly relevant evidence if the search, though unlawful, nonetheless bears fruit. That cost is the price our Constitution willingly accepts in the interest of preserving the rights of all to be free from unreasonable governmental intrusions.

In *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the Supreme Court considered the extent to which the exclusionary rule applies in civil proceedings. *Janis* dealt with evidence unlawfully seized by state officers. In a 5–3 decision, with Justice Stevens not participating, the Supreme Court allowed the admission of that evidence in a federal gambling excise tax proceeding. *Id.* at 459–60, 96 S.Ct. 3021. The Court once again balanced the likely social benefits of applying the rule against the costs of excluding the evidence. *Id.* at 453–54, 96 S.Ct. 3021. Although *Elkins v. United States,* 364 U.S. 206, 223, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) had made clear that evidence unlawfully seized by state officials cannot be admitted in federal criminal prosecutions, the majority concluded that state criminal law enforcement officers would not be significantly deterred by a rule that excluded the evidence from federal tax proceedings. *Janis,* 428 U.S. at 459, 96 S.Ct. 3021. The decision pointed out that earlier cases applying the exclusionary rule in civil proceedings had involved "intrasovereign" violations. *Id.* at 456, 96 S.Ct. 3021.[2]

Lower federal courts have since elaborated on the *Janis* balancing test. In *Tirado v. C.I.R.,* 689 F.2d 307, 310 (2nd Cir.1982), the Second Circuit concluded that "[d]etermining when the likelihood of substantial deterrence justifies excluding evidence requires some assessment of the motives of the officials who seized the challenged evidence." The court also observed that "[t]he key issue, implicit in *Janis* as in other exclusionary rule decisions, is still what concerns the seizing officers had in mind." *Id.* at 313. Elaborating on this theme, the Sixth Circuit, in *Wolf v. C.I.R.,* 13 F.3d 189, 194–95 (6th Cir.1993), set forth five factors relevant to the application of the exclusionary rule in a civil proceeding: (1) the nature of the proceed-

---

**2.** *See, e.g., Pizzarello v. United States,* 408 F.2d 579, 586 (2nd Cir.1969) (evidence unlawfully seized by federal Treasury agents inadmissible in federal wagering excise tax assessment); *United States v. Blank,* 261 F.Supp. 180, 184 (N.D.Ohio 1966) (evidence unlawfully seized by IRS agents inadmissible in federal wagering excise tax assessment); *Powell v. Zuckert,* 366 F.2d 634, 640 (D.C.Cir.1966) (evidence unlawfully seized by Air Force special agents inadmissible in civilian employee discharge proceeding); *State of Iowa v. Union Asphalt & Roadoils, Inc.,* 281 F.Supp. 391, 407 (S.D.Iowa 1968) (evidence unlawfully seized by agents of the Iowa Attorney General cannot be offered into evidence by the State as plaintiff in a civil action under the antitrust laws).

ing; (2) whether the proposed use of unconstitutionally seized material is intersovereign or intrasovereign; (3) whether the search and secondary proceeding were initiated by the same agency; (4) whether there is an explicit and demonstrable understanding between the two governmental agencies; and (5) whether the secondary proceeding fell within the "zone of primary interest" of the officers that conducted the search.

The first factor, the nature of the civil proceeding, is clearly significant and points strongly toward requiring exclusion in this case. This Court recently examined the CSET assessment process in *Bryant v. State,* 660 N.E.2d 290, 297 (Ind.1995), and concluded "the CSET is so far removed from a normal excise tax that it must be classified as a punishment." The Court noted the CSET's focus on deterrence, not revenue raising, as evidenced by the receipt to a CSET taxpayer that admonishes that the unauthorized delivery, sale, possession or manufacture of a controlled substance is a crime. *Id.* at 296. A possessor of contraband is required to show this receipt to prove the tax has been paid. *Id.* At the time *Bryant* was decided, the receipt was valid for only forty-eight hours, and a taxpayer who possessed the same drug for a longer period was required to repay the tax every forty-eight hours to avoid the CSET's additional sanctions. *Id.* In 1996, after the ruling in *Bryant,* the General Assembly extended the validity of the receipt from forty-eight hours to thirty days. Ind.Code § 6–7–3–10(b) (1998). Despite this change, I think it obvious that the tax remains, at heart, punitive in nature. I acknowledge that the federal wagering tax involved in *Janis* has some of these characteristics, but it is nowhere near the CSET in overall draconian impact.

*Bryant* also pointed out that the fact the CSET applied only if a crime had been committed suggested the CSET's punitive nature. 660 N.E.2d at 296. The 1996 CSET amendments did nothing to alter this, and now, as then, the tax is imposed only on individuals who deliver, possess or manufacture controlled substances in violation of Indiana or federal drug laws. *Id.* at 296–97. In contrast, in both *Tirado,* 689 F.2d at 309, and in *Wolf,* 13 F.3d at 191, two of the principal cases upon which the majority relies, the civil proceedings were for assessment and collection of federal income taxes which apply to all human activity and are plainly revenue measures, not surrogate punishments.

Finally, *Bryant* noted that an excise tax is imposed upon the performance of an act or the enjoyment of a privilege, but the CSET is imposed only after a taxpayer's drugs have been confiscated, and the taxpayer neither enjoys a privilege nor performs an act at the time of taxation. 660 N.E.2d at 297. That observation remains true after the 1996 amendments. The State contends that the United States Supreme Court's subsequent ruling in *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), has called into question this Court's holding in *Bryant* that double jeopardy precluded imposition of the tax and criminal prosecution for the same drug possession. Even if this is the case, I nevertheless believe *Bryant* was plainly correct in its view that the civil sanctions imposed pursuant to the CSET are punitive in nature.

The second *Wolf* factor is the one *Janis* emphasized in finding evidence seized by state officers to be admissible in a federal tax proceeding: whether the evidence is to be used in a proceeding under the same government whose agents seized it. Here, of course, both the taxing authorities and

the law enforcement officers operated as agents of the State of Indiana.

The third, fourth, and fifth *Wolf* factors are closely related. The third factor is whether the search and the civil proceeding were initiated by the same agency. If so, the potential incentive to ignore the Fourth Amendment is greater. As *Wolf* put it, quoting *Tirado:* " '[A]gents are likely to have all the responsibilities of their agency in mind as they go about their investigations.' " 13 F.3d at 195. Although the sheriff and the initiator of the CSET proceeding are not literally the same agency, they plainly operated in concert. Detective Michael Turner of the Marion County Sheriff's Department conducted the initial illegal search, notified the Department of Revenue that the criminal case was being dismissed, informed the Department that the prosecuting attorney would be asking the Department to begin collection proceedings, and attended the execution of the tax warrant and the search of Adams' home. Indeed, the link between law enforcement and tax collection is embedded in the statute. The 1996 amendments to the CSET mandate the Department may not commence collection proceedings unless the Department either is ordered to do so in a court's sentencing order, or is notified in writing by the prosecuting attorney of the jurisdiction where the offense occurred that the prosecuting attorney does not intend to pursue criminal charges related to the controlled substance. I.C. § 6–7–3–19.

This brings us to the fourth *Wolf* factor: whether, if two agencies are involved, there is an explicit and demonstrable understanding between the two. It seems obvious that if the Department must rely upon notification from law enforcement agencies before it may commence collection proceedings, an explicit and demonstrable understanding between the agencies must exist. In any event, the *Wolf* court explained that in determining whether there is such an understanding between the two governmental agencies, a court may consider the existence of a statutory regime "in which both agencies share resources—particularly resources derived from one of the proceedings." 13 F.3d at 195. The CSET provides for a sharing of resources in the most direct form: it offers a direct economic incentive to law enforcement officers who pursue CSET assessments. The act provides that thirty percent of each assessment is to go to the law enforcement agency that is responsible for the information leading to the assessment, to be used "to conduct criminal investigations." I.C. § 6–7–3–16(b). Similarly, ten percent of CSET money collected each month is awarded to the law enforcement training board to train law enforcement personnel. *Id.* § 6–7–3–16(c). As *Tirado* observed, the exclusionary rule is most needed where the concerns of the securing officers are furthered by a successful seizure. In this case the officers not only further their agency's mission; they gain a bounty from a CSET collection.

The fifth *Wolf* factor is whether the secondary proceeding fell within the "zone of primary interest" of the officers that conducted the search. As the court explained, "Where the relationship between the objectives of the law enforcement agency to which the officer belongs and the secondary proceedings is close, an inference may be drawn that the officers had the use of the evidence in the subsequent proceeding in mind when they made the seizure." *Wolf,* 13 F.3d at 195. The zone of primary interest of a law enforcement officer is "the apprehension, incapacitation, punishment, and ... rehabilitation of criminals, as well as the possible deterrence of future criminals through the imposition of criminal sanctions." *Id.* at 194. Because the CSET applies only to criminal activity,

its enforcement quite properly falls within the zone of primary interest of a law enforcement officer. Indeed, the funds collected will directly bolster the budget, and presumably the crime-fighting ability, of the officer's law enforcement agency. The Willie Sutton principle applies here—the collection of the tax is where the money is.

In sum, it seems to me that these general principles all cut in the direction of application of the exclusionary rule. In addition, other courts have found the Fourth Amendment to require exclusion in the specific context of controlled substance tax cases. In *Vara v. Sharp*, 880 S.W.2d 844 (Tex.App.1994), the Court of Appeals of Texas applied the *Wolf* factors to the Texas Controlled Substances Tax Act, which is very similar to Indiana's CSET. The court concluded the federal exclusionary rule applied, and the provision of the Texas statute that prohibited application of the exclusionary rule violated the United States Constitution. *Id.* at 852. The *Vara* court pointed out that the exclusionary rule has been applied in civil forfeiture proceedings because of their quasi-criminal nature. *Id.* at 851 (citing *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965)). The court also noted the United States Supreme Court has held that certain constitutional protections normally reserved for criminal proceedings apply to civil proceedings of a quasi-criminal nature. *Id.* (citing *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)). In *Austin*, the Supreme Court held that forfeiture proceedings "historically have been understood, at least in part, as punishment," and were therefore subject to the limitations of the Eighth Amendment's excessive fines clause. 509 U.S. at 618, 113 S.Ct. 2801. Under this line of cases, the more punitive the proceeding, the greater the constitutional protections afforded and the more persuasive the argument for application of the exclusionary rule.

For all of these reasons, I believe the Fourth Amendment interest in deterring illegal searches and seizures outweighs the costs of excluding illegally obtained evidence in a CSET proceeding. The cost of application of the exclusionary rule in tax collection proceedings is merely to impair the State's ability to collect this fine clothed as a tax. It may be something of an overstatement to say, as the Court of Appeals did in Adams' criminal case, that if the exclusionary rule does not apply to CSET proceedings, there is "absolutely no downside risk to officers illegally seizing drug evidence." *Adams v. State*, 726 N.E.2d 390, 395 (Ind.Ct.App.2000). But it is not an overstatement to say that the incentive to search without a warrant is significant if very substantial financial penalties may be recovered for the seizing agency. That puts all citizens at risk of overzealous enforcement. The Fourth Amendment strikes that balance in favor of application of the exclusionary rule.

DICKSON, J., concurs.