**Brent J. MESHER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 90–43–FR.**

United States District Court, D. Oregon.

May 1, 1990.

234

Norman Sepenuk, P.C., Douglas A. Stringer, and Gary P. Compa, Kell, Alterman & Runstein, Portland, Or., for plaintiff.

Charles H. Turner, U.S. Atty., Portland, Or., and Mark E. Nebergall, U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

FRYE, District Judge:

Plaintiff, Brent J. Mesher, commenced this action pursuant to 26 U.S.C. § 7429 to obtain summary review of a jeopardy assessment made against him for unpaid federal income taxes and the penalties thereon for the tax years 1981 through 1988 in the aggregate total amount of $1,105,371.00. The government moves for summary judgment (# 16) on the grounds that no genuine issue of material fact remains with regard to the reasonableness of the jeopardy assessment made against Mesher and the appropriateness of the amount of the jeopardy assessment. Mesher has cross-moved for summary judgment in his favor (# 31).

The court held a hearing on March 12, 1990. At the conclusion of the evidence, the court ruled that the jeopardy assessment was proper, but allowed the parties further time to brief the issues as to whether 1) the levy and seizure of the Rotenberg note was wrongful; 2) the levy upon Mesher's life insurance policy was proper; and 3) the levy upon Mesher's assets in the custody of the United States Marshal was proper.

## UNDISPUTED FACTS

In February and March, 1989, large amounts of currency, cashiers checks, and coins were seized by the government from safe-deposit boxes in Mesher's name in a number of local banks. Prior to this seizure, Mesher had paid substantial sums of money for goods and services either by cash or by cashiers checks purchased with cash.

On February 24, 1989, Mesher was arrested in possession of three kilograms of cocaine. On March 22, 1989, Mesher was indicted by a federal grand jury on charges of possessing narcotics with the intent to distribute them, and of structuring cash transactions to avoid the filing requirements of the law. On April 10, 1989, Mesher entered pleas of guilty to both counts in the indictment. On June 25, 1989, judgments of conviction were entered, and Mesher was sentenced to imprisonment for a term of 136 months on Count 1 and 60 months on Count 2, the terms of the confinement to run concurrently with each other.

In connection with the prosecution of the criminal case, a civil forfeiture action was filed entitled *United States v. $625,100 in United States Currency*, Civil No. 89–516–FR. Mesher filed a claim to the property at issue. On September 20, 1989, a stipulated judgment of forfeiture was entered whereby Mesher forfeited to the government property worth approximately one million dollars as proceeds from illegal drug trafficking activities. Pursuant to the settlement agreement, certain properties valued at some $85,031 were to be returned to Mesher. Before the property

could be returned to Mesher pursuant to the stipulated judgment, the Internal Revenue Service (IRS) seized the property.

Mesher has reported the following financial information on prior tax returns:

| Year | Adjusted Gross Income | Taxable |
|------|------------------------|---------|
| 1981 | $17,019.00 | $10,871.00 |
| 1982 | (438.00) | (7,027.00) |
| 1983 | 4,958.00 | 517.00 |
| 1984 | 10,278.00 | 9,278.00 |
| 1985 | 11,745.00 | 10,705.00 |
| 1986 | 21,340.00 | 10,856.00 |
| 1987 | 11,256.00 | 6,816.00 |
| 1988 | 0.00 | 0.00 |

Memorandum in Support of Motion for Summary Judgment, p. 6, para. 30.

The government contends that the jeopardy assessment is reasonable because Mesher accumulated extremely large amounts of money through drug dealings and concealed his assets from the government.

Mesher contends that the jeopardy assessment is unreasonable as a matter of law because 1) he has been in custody since February 24, 1989; 2) he pled guilty to one count of cocaine distribution and one count of laundering drug money and provided information as to the location of his storage locker; 3) he had a safe-deposit box, to which his mother had a key, containing $150,000 in currency, which was not discovered by the government agents until three weeks after his arrest, and from which his mother had no authority to remove the money; 4) he has met with government agents on several occasions to provide information about drug trafficking; 5) pursuant to a stipulated agreement of forfeiture with the United States, he forfeited approximately one million dollars in currency and assets; and 6) he has set forth in a sworn statement that he is not concealing any other assets and has offered to freeze most of his remaining assets until his tax liability is determined by the tax court.

## ANALYSIS

The Internal Revenue Code authorizes immediate assessment of taxes without prior notice, and summary action to collect the assessed taxes, when collection of the taxes may be jeopardized by delay, 26 U.S.C. §§ 6861 and 6851 (a jeopardy assessment). The IRS regulations provide for a jeopardy assessment when a taxpayer "appears to be designing quickly to place his ... property beyond the reach of the government, either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons." Internal Revenue Code Regulations at 1.6851–1(a)(1). To ameliorate the hardships that may result from jeopardy assessments, the taxpayer is permitted, under section 7429(b), to obtain summary review by a federal district court of the reasonableness of the making of the assessment and the appropriateness of the amount assessed. 26 U.S.C. § 7429(b).

■ A jeopardy assessment is not intended to establish a taxpayer's ultimate liability for the taxes at issue. Ultimate tax liability can be challenged in any proceeding brought at a later date by the taxpayer in a tax court. The scope of the jeopardy determination under section 7429 is limited to two questions: 1) whether the jeopardy assessment was reasonable under the circumstances; and 2) whether the amount assessed was appropriate. *See Klotzman v. United States*, 618 F.Supp. 112, 113 (D.Md.1985).

■ The burden of proving that the jeopardy assessment was reasonable is upon the government. 26 U.S.C. § 7429(g)(1). In considering whether the making of a jeopardy assessment is reasonable under the circumstances, the court typically considers the following facts:

(1) Possession of, or dealing in, large amounts of cash.

(2) Possession of narcotics or evidence of other illegal activities.

(3) Prior tax returns reporting little or no income despite the taxpayer's possession of large amounts of cash.

(4) Dissipation of assets through forfeiture, expenditures for attorneys' fees, appearance bonds, and other expenses.

(5) The lack of assets from which potential tax liability can be collected.

(6) Use of aliases, which makes it more difficult to locate either the taxpayer or any of his assets.

(7) Failure to supply appropriate financial information when requested.

(8) Multiple addresses, making it harder to find the taxpayer.

*See Crowley v. United States*, 88–1 U.S. T.C. para. 9146, 1987 WL 45143 (W.D.Pa. 1987); *Billig v. United States*, 81–2 U.S. T.C. para. 9792 (N.D.Ga.1981); *Serpa v. United States*, 81–1 U.S.T.C. para. 9323 (D.Neb.1981).

The government relies upon evidence that Mesher conducted the bulk of his substantial financial transactions in cash; Mesher was in possession of at least $800,-000 in United States currency when arrested; and Mesher pled guilty to possession of illegal drugs with the intent to distribute them. The government points to the fact that Mesher's income tax returns for 1981 through 1988 report a total gross income of $185,699 and an adjusted gross income of $76,596; yet at the time of his arrest, Mesher was found to be in possession of real and personal property valued in excess of $1.6 million.

There is evidence that Mesher failed to properly report to the IRS the taxable income which he earned from his illegal drug trafficking business, and that he actively concealed his assets from the government. There is evidence to believe that Mesher has had the motive and the opportunity to dissipate his assets, and that he has done so even while he was incarcerated. For example, while in prison, Mesher directed his life insurance carrier to surrender the $14,000 cash value of his life insurance policy to his brother. While Mesher pled guilty, gave the government information, and settled the forfeiture case, he also accumulated large sums of money and property through illegal activities and concealed those assets from federal reporting requirements as well as tax requirements. Given the magnitude of the illegal profits, the concealment of those profits, and the steps taken by Mesher from prison to dissipate his assets, the court concludes that the making of the jeopardy assessment against Mesher was reasonable under the circumstances.[1]

### 1. *The Rotenberg Note*

■ Mesher contends that even if the court upholds the jeopardy assessment, the court should find that the levy upon and seizure of the Rotenberg note was not proper and order the note returned under section 7429(b)(4), which provides in the part relied upon by Mesher that "[i]f the court determines that the making of such levy is unreasonable ... then the court may ... take such other action as the court finds appropriate." Mesher contends that he has assigned the Rotenberg note to his attorney, and that since his attorney has a position superior to the position of the IRS, the note should be returned to Mesher.

The government argues that this court has no jurisdiction to determine the claim of Mesher's attorney to the Rotenberg note. The government asserts that section 7429 affords a third party a judicial remedy to litigate his claim to a taxpayer's property only when the IRS seizes the property and applies it to the tax liability of the taxpayer.

The court's authority under section 7429 to determine the reasonableness of a jeopardy assessment is limited. While the statute allows the court to "take such other action as the court finds appropriate," that authority is limited to circumstances where the court finds that the jeopardy assessment is unreasonable. In this case, the court has concluded that the jeopardy assessment is reasonable. Moreover, there are no circumstances presented that would justify expanding the limited scope of section 7429 to include a determination by this court of the rights of a third party to an asset seized where Congress has provided another remedy for such claims. While Mesher argues that the IRS should not be permitted to employ the delaying tactic that it now suggests, Mesher has not shown any injury that he or his counsel would suffer if they are required to pro-

---

**1.** Mesher has conceded that the amount of the jeopardy assessment is not in issue.

ceed under the statute designed to determine the claims of third parties.

## 2. The Life Insurance Policies

█ Mesher asserts that his life insurance policies were improperly liquidated by the IRS in violation of section 6863(b)(3), and that the remedy for this is abatement of the levy on the policy and return to him of its cash value plus interest.

Mesher owns a life insurance policy with Executive Life Insurance Company of Los Angeles, California (Executive Life). Revenue Officer Donald Stroum discovered the policy and arranged for service of a notice of levy upon Executive Life. Officer Stroum testified at the hearing that several days after the notice of levy was served, he received a telephone call from a representative of Executive Life who acknowledged receipt of the levy and stated that coincidentally she had received a letter of surrender from Mesher requesting that the policy be surrendered and the money be sent to Mesher's brother. The policy was surrendered by Executive Life, but the proceeds of the policy were sent to Officer Stroum rather than to Mesher's brother.

Mesher argues that the proceeds of the surrender of his insurance policy to the IRS violates section 6863(b)(3)(A)(ii) of the Internal Revenue Code, which prohibits the sale of seized property pending a tax court petition. The government argues that the letter of surrender received by Executive Life constitutes a liquidation of the policy, and that the government violated no statute by seizing the proceeds of the policy.

The court finds that the actions of Officer Stroum were proper. The only evidence is that the policy was surrendered by Executive Life upon the request of Mesher and not the IRS.

## 3. Assets in the Possession of the United States Marshal

█ Mesher contends that the IRS acted improperly in levying on the property which was in the possession of the United States Marshal in connection with the civil forfeiture proceeding. Mesher argues that it was patently unfair to both him and those in the United States Attorney's Office who negotiated the settlement in the forfeiture proceeding for the IRS to seize the property which was to be returned to Mesher pursuant to the stipulated judgment of forfeiture signed by this court on September 21, 1989 in the forfeiture case, Civil No. 89–516–FR.

The government argues that there was nothing improper about the levy; that Mesher did not call upon the United States Marshal for delivery of the property to him prior to the time that the IRS perfected the tax lien and served the notice of levy; and that there is nothing unfair about the IRS collecting taxes on the fruits of Mesher's illegal activities.

The court finds that there is no evidence of bad faith on the part of the IRS. Mesher points to no requirement that the IRS be involved in the settlement of the forfeiture proceeding. There is no evidence that the IRS was aware of the settlement negotiations or that any portion of the settlement agreement was violated by the levy of the IRS. There was evidence presented at the hearing that when negotiating the settlement in the civil forfeiture action, counsel for the government offered to contact the IRS and Mesher's counsel declined.

## CONCLUSION

There are no grounds upon which this court will order the return of any individual property seized under the jeopardy assessment. The court adheres to its conclusion that the jeopardy assessment was reasonable.

The government's motion for summary judgment (# 16) is granted. Mesher's cross-motion for summary judgment (# 31) is denied. Judgment will be entered for the government.