Virginia GARWOOD and Kristin
Garwood, Petitioners,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.

No. 82T10–0906–TA–29.

Tax Court of Indiana.

Aug. 19, 2011.

Stacy K. Newton, Rudolph, Fine, Porter & Johnson, LLP, Evansville, IN, Attorney for Petitioners.

Gregory F. Zoeller, Attorney General of Indiana, Andrew W. Swain, Chief Counsel, Tax Section, John D. Snethen, Jessica E. Reagan, Lynne D. Hammer, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT

WENTWORTH, J.

On June 29, 2009, Virginia and Kristin Garwood (the Garwoods) initiated an original tax appeal, challenging the Indiana Department of State Revenue's (Department) issuance of sixteen jeopardy tax assessments for portions of the 2007 through 2009 tax years.[1] The Garwoods and the Department subsequently filed motions for summary judgment.[2]

In their motion for summary judgment, the Garwoods assert that the jeopardy assessments are void as a matter of law because the Department failed to provide them with an administrative hearing following their protest of the assessments, violating their procedural due process rights guaranteed under the Fourteenth Amendment to the United States Constitution. (*See* Petrs' Br. Supp. Mot. Summ. J. at 2–4, Nov. 22, 2010.) In its motion, the Department claims it is entitled to judgment as a matter of law because the Tax Court lacks subject matter jurisdiction over the Garwoods' appeal,[3] the use of jeopardy assessments was warranted, and the use of best information available assessments (BIA assessments) was reason-

1. The Department assessed the Garwoods with income tax liabilities for the 2007 and 2008 tax years and sales tax liabilities for the tax periods ending on December 31, 2007, through April 30, 2009. (*See generally* Resp't Des'g Evid. Ex. B, Jan. 31, 2011.)

2. The parties have designated certain evidence as confidential; therefore, the Court's order will provide only that information necessary for the reader to understand its disposition of the issues presented. *See generally* Ind. Administrative Rule 9.

3. Previously in this matter, the Department filed a motion to dismiss for lack of subject matter jurisdiction, which the Court denied on December 21, 2010. *Garwood v. Ind.* *Dep't of State Revenue,* 939 N.E.2d 1150 (Ind. Tax Ct.2010). Thereafter, the Department filed an Original Action in the Indiana Supreme Court seeking writs of mandamus and prohibition to halt this Court from exercising jurisdiction, which the Supreme Court declined to review. In its motion for summary judgment, the Department claims for the third time that the Court lacks subject matter jurisdiction. (*See* Resp't Mem. Supp. Mot. Summ. J. (hereinafter, "Resp't Mem.") at 20–21.) The Court maintains that it has subject matter jurisdiction and incorporates by reference the rationale previously articulated in both its Order issued December 21, 2010, and its March 10, 2011, preliminary response brief filed in the Original Action with the Supreme Court.

able.[4] (*See* Resp't Mem. Supp. Mot. Summ. J. (hereinafter, "Resp't Mem.") at 20–24, Mar. 3, 2011 (footnotes added).)

When, as here, a case can be resolved on either constitutional grounds or statutory/regulatory construction grounds, the Court will decide only the latter. *See Southern Ind. Gas & Elec. Co. v. Ind. Dep't of State Revenue*, 804 N.E.2d 877, 882 n. 6 (Ind. Tax Ct.2004) (*citing Indiana Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n*, 695 N.E.2d 99, 108 (Ind.1998))*, review denied.* Accordingly, the Court restates the dispositive issue as whether the Department properly issued jeopardy assessments to the Garwoods.

## FACTS

The following facts are undisputed. The Garwoods have operated a family-owned dairy farm in Mauckport, Indiana for nearly thirty years. In 2007, the farm was on the brink of insolvency due to both the soaring price of grain and the declining price of milk. As a result, Virginia decided to supplement her family's income by breeding and selling dogs. Virginia purchased a pregnant cocker spaniel in July 2007. The cocker spaniel had four puppies in August, and Virginia sold them for a total of $400.00. In addition, one of the Garwoods' farm dogs, an Australian shepherd, had several puppies, and Virginia sold two of them for a total of $150.00. Virginia purchased approximately thirty-four other dogs for breeding purposes in 2007; however, she could not immediately breed them because several of the dogs were unhealthy.

At some point in 2008, Virginia purchased additional breeding stock and acquired several puppies for purposes of resale, and by November 2008, about fifty-two had been sold for an estimated $4,144.00. Then, in both December 2008 and January 2009, an acquaintance of the Garwoods who was closing his breeding business gave Virginia some of his breeding stock. Some of his dogs were undesirable breeds and others were extremely unkempt, but Virginia had them treated by a veterinarian, groomed them, and sold them, giving most of the sales proceeds to her acquaintance.

On or about October 16, 2008, a Harrison County Animal Control Officer received a consumer complaint concerning the Garwoods' treatment and sales of their dogs. The next day, the Officer went to the Garwoods' residence to investigate the complaint. He met Virginia in her driveway and asked to speak to the person who sold the puppy to the customer; Virginia indicated that the person was not there and asked him to leave. The Officer gave Virginia a copy of an Animal Control Ordinance and left the premises. Over the course of the next three months, the Animal Control Officer received two other complaints regarding the Garwoods' dog sales, and as a result, he contacted the Office of the Indiana Attorney General (the OAG) to report that the Garwoods may be operating a puppy mill.[5]

In February 2009, the OAG and the Department commenced a joint investiga-

---

4. Due to the disposition of this matter on other grounds, the Court need not address whether the Department's use of BIA assessments was reasonable.

5. At the time of these events, Indiana's statutes and regulations neither defined the term "puppy mill" nor criminalized certain breed-ing or dog selling activities. (*Cf., e.g.,* Petrs' Des'g Evid. Vol. 2, Ex. J at 1 (acknowledging that "[t]here is no legal definition for the term 'puppy mill' "), Mar. 29, 2011 *with* IND.CODE § 15–21–1 *et seq.* (2010) (commercial dog breeding statutes).)

tion to determine whether the Garwoods were remitting Indiana income and sales tax due on their sales of dogs. The investigation found that the Garwoods routinely placed advertisements in two local newspapers between 2007 and 2009, offering to sell adult dogs and puppies for between $100 and $400 each. The investigation also revealed that the Garwoods were not registered retail merchants, had never remitted sales tax or filed sales tax returns, and had not reported the income derived from or tax due on their income from dog sales. Approximately two months later, in April 2009, two of the OAG's special investigators purchased two puppies from the Garwoods for a total of $550.00 in cash. The Garwoods did not issue receipts in either transaction and, in one instance, verbally indicated the purchase price included sales tax.[6] The next month, on May 29, the Department generated sixteen documents (two each of Records of Jeopardy Finding, Jeopardy Assessment Notices and Demands (Jeopardy Assessments), Claim Vouchers for clerk costs, and Warrants for Collection of Tax (Jeopardy Tax Warrants)) related to its jeopardy assessment procedure—half directed to Virginia and the other half to Kristin. Three days later, the Deputy Commissioner of Enforcement for the Department executed the several Investigation Summaries[7] and Resident Individual Tax Computations forms.

The following day, June 2, a tumultuous series of events took place as an unspecified number of individuals from the OAG and the Department went to the Garwoods' residence just after 7:00 a.m. to serve the jeopardy assessment documents and demand immediate payment of the tax, interest, and penalties allegedly owed. An investigator from the Department's special investigation unit explained to each of the women individually that the amount she owed was $142,367.94 and that without immediate payment, the State would then and there "levy [her] personal property to satisfy the taxes due[.]"[8] (Resp't Des'g Evid. Ex. K ¶¶ 6–7, Jan. 31, 2011 (footnote added).) When first Virginia and then Kristin stated that she could not pay that amount immediately, the investigator served each with the Jeopardy Tax Warrants and the associated Investigation Summaries. The Department and the OAG, assisted by the Indiana State Police and sixty volunteers from the United States and Missouri Humane Societies, seized all 240 dogs on the premises, including the Garwoods' house pets and farm dogs. Other property seized from the Garwoods included $1,260 in cash, business records showing the Garwoods received $25,274.31 from their dog sales, un-cashed checks totaling $1,325 (two containing dog sale notations), and copies of Virginia's 2005, 2007, and 2008 federal and state income tax returns.[9] Later the same day,

---

**6.** Kristin gave one of the investigators a piece of notebook paper merely stating: "4-15-09, I sold a male puppy wormed from 2 weeks until you picked it up. Shot at 6 weeks." (*See* Resp't Des'g Evid. Ex. E ¶ 14, Jan. 31, 2011.)

**7.** An Investigation Summary, Form AD–7IA, documents the findings of the Department's investigation and includes a written Explanation of Adjustments.

**8.** The Jeopardy Tax Warrants actually provide that Virginia's total liability was $142,409.52

and Kristin's total liability was $142,326.36. (*See generally* Resp't Des'g Evid. Ex. K, Ex. 4A, Jan. 31, 2011.)

**9.** The Garwoods' dogs were seized pursuant to the Jeopardy Tax Warrants. *See* IND.CODE § 6–8.1–5–3(c) (2011). In contrast, it appears that the Garwoods' other property was seized pursuant to a search warrant issued by the Marion County Superior Court. (*See* Resp't Des'g Evid. Ex. 1, Ex. 5 ¶¶ 20–22, Ex. 8, Dec. 20, 2011; Resp't Des'g Evid. Ex. E ¶¶ 20–22, Jan. 31, 2011.)

the Department and the OAG filed with the Harrison Circuit Court all of the Jeopardy Tax Warrants and a Verified Petition for a Post-judgment Restraining Order and Injunction that sought to enjoin the Garwoods from doing business in Indiana until their tax liabilities were satisfied. That afternoon, the Attorney General held a television press conference and newspaper interview, publicizing the seizure of the Garwoods' dogs.

The next day, the OAG (on behalf of the Department) sold all of the 240 dogs seized to the Humane Society of the United States for a total of $300.00. Then on June 4, the Harrison Circuit Court entered the parties' agreed order that, among other things, stayed all collection efforts by the Department to allow the Garwoods to pursue all available remedies regarding the Jeopardy Assessments.

In accordance with 45 IAC 15–5–8 and the written notice on the Department's Jeopardy Assessment Notice and Demand forms, the Garwoods timely filed a written protest with the Department on June 10, 2009. The Department, in a letter issued June 22, 2009, declined to hold a hearing on their protest and advised the Garwoods to seek relief through the Harrison Circuit Court. The Garwoods subsequently initiated this original tax appeal. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

Summary judgment is proper only when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). When both parties move for summary judgment, as here, this standard remains unaltered. *See Indiana Farmers Mut.*

*Ins. Co. v. N. Vernon Drop Forge, Inc.,* 917 N.E.2d 1258, 1266 (Ind.Ct.App.2009) (citation omitted), *trans. denied.*

## LAW AND ANALYSIS

The Department has the primary responsibility for administering, collecting, and enforcing Indiana's listed taxes,[10] and in fulfilling its duties, it may exercise any power conferred on it under Indiana Code § 6–8.1–1 *et seq. See* IND.CODE § 6–8.1–3–1(a) (2007) (footnote added). To execute these duties, the Indiana Legislature has granted the Department authority to employ the powerful tool of jeopardy assessment in exceptional circumstances. Indeed, the use of a jeopardy assessment is an extraordinary measure because it allows the state to deprive a taxpayer of property without first providing constitutionally guaranteed notice or an opportunity to be heard. *Clifft v. Ind. Dep't of State Revenue,* 660 N.E.2d 310, 317–18 (Ind. 1995). As a result, our Legislature very narrowly tailored the Department's jeopardy assessment power to further the essential state interest of exercising its power to tax when collection is at risk. *See Adams v. State,* 762 N.E.2d 737, 741 (Ind.2002) (explaining that jeopardy tax warrants "typically can be issued only when the Department concludes that the taxpayer intends to take some action that would jeopardize the state's ability to collect the tax"). Unlike controlled substance excise tax (CSET) assessments, which are *per se* jeopardy assessments under Indiana Code § 6–7–3–1 *et seq.,* the general jeopardy assessment statute, Indiana Code § 6–8.1–5–3, requires that specific exigent circumstances exist before a jeopardy assessment may be imposed: circumstances identifying the line between fair tax administra-

---

**10.** Indiana's listed taxes include both the income tax and the sales tax. *See* IND.CODE § 6– 8.1–1–1 (2007).

tion and oppression. *See id.*, at 741, 744. To that end, Indiana Code § 6–8.1–5–3 provides that one of four circumstances must exist for the Department to issue a jeopardy assessment:

> If at any time the department finds that a person owing taxes intends to *[1]* quickly leave the state, *[2]* remove his property from the state, *[3]* conceal his property in the state, or *[4]* do any other act that would jeopardize the collection of those taxes, the department may declare the person's tax period at an end, may immediately make an assessment for the taxes owing, and may demand immediate payment of the amount due, without providing the notice required in IC 6–8.1–8–2.

IND.CODE § 6–8.1–5–3(a) (2007).[11]

The Department claims it properly exercised its statutory authority under Indiana Code § 6–8.1–5–3 in issuing jeopardy assessments to the Garwoods. (*See* Resp't Mem. at 21.) The Garwoods assert, however, that the Department's use of the jeopardy assessment procedure against them exceeded statutory authority. (*See* Petrs' Resp. Br. Opp'n Resp't Mot. Summ. J. (hereinafter, "Petrs' Resp.") at 6–9, Mar. 29, 2011.) The Garwoods are correct.

### 1. *Intent to quickly leave the state*

■ The Department may issue a jeopardy assessment when it determines a person owing taxes intends to quickly leave the state thereby avoiding tax collection. I.C. § 6–8.1–5–3(a). The Department does not claim that the Garwoods were flight risks. (*See, e.g.*, Resp't Mem. at 21–24.) In fact, the Garwoods were community fixtures, having lived in Harrison County their entire lives and having operated the

same dairy farm there for nearly thirty years. (*See* Petrs' Des'g Evid. Vol. 1, Ex. B at 19–21, Mar. 29, 2011; *see also* Petrs' Resp. at 8.) Accordingly, this is not a basis for the Department's use of jeopardy assessments in this case.

### 2. *Intent to remove property from the state*

■ The Department may issue a jeopardy assessment when it determines a person owing taxes intends to remove property from the state to avoid the collection of tax. I.C. § 6–8.1–5–3(a). The Department does not claim that the Garwoods intended to remove property from the state. (*See, e.g.*, Resp't Mem. at 21–24.) Moreover, the nature of the Garwoods' Indiana property (such as real property, farm animals and equipment, breeding dogs and their puppies, dog cages, etc.) augers against it easily being moved. Accordingly, this is not a basis for the Department's use of jeopardy assessments in this case.

### 3. *Intent to conceal property in the state*

■ The Department may issue a jeopardy assessment when it determines a person owing taxes intends to conceal property in the state to avoid the collection of tax. I.C. § 6–8.1–5–3(a). The Department claims its investigation revealed evidence of this intent that is documented in its designated sales and income tax Investigation Summaries: "Further, as the taxpayer previously refused the officer of the Harrison County Animal [C]ontrol access to their property, the taxpayer maintains the appearance that they are attempting to

---

11. The Department may also issue a jeopardy assessment to a taxpayer "[i]f [it] has sent a notice of proposed assessment under [Indiana Code § 6–8.1–5–1] to [a] taxpayer by United States mail and the notice is returned to the department because the taxpayer has moved and the department is unable to determine the taxpayer's new address[.]" I.C. § 6–8.1–5–3(b).

conceal property in the state." (*See, e.g.,* Resp't Des'g Evid. Ex. K, Ex. 4B at 2, Jan. 31, 2011.) Virginia's refusal to allow the Harrison County Animal Control Officer on her property in response to a consumer complaint is not evidence of her attempt to conceal property in the state within the meaning of Indiana Code § 6–8.1–5–3(a). In fact, it is not reasonable to infer that her intent was to conceal property to avoid paying taxes because one would not normally expect an Animal Control Officer, who typically investigates matters involving animals, to be the emissary of the tax collector.

The Department further argues that because the Garwoods purchased large numbers of breeding animals, they could as easily sell the dogs in bulk to conceal them, or that "[d]ogs, by virtue of being four-legged animals, could easily run away if set free." (*See* Resp't Mem. at 21 n. 28; *see also* Resp't Mot. Summ. J. ¶ 4 (*citing* Resp't Des'g Evid. Ex. GG, Mar. 3, 2011).) These arguments are speculative. Indeed, there is no evidence that indicates the Garwoods would sell all their dogs or release them to avoid paying tax. The evidence shows instead that the Garwoods took in, kept, and attempted to care for several unhealthy dogs. (*See, e.g.,* Petrs' Des'g Evid. Vol. 1, Ex. A ¶¶ 4, 10, Ex. B at

39–40, 53–54.) Specious *non sequiturs* are not probative evidence of an intent to conceal property. Accordingly, this is not a basis for the Department's use of jeopardy assessments in this case.

### 4. *Intent to do any other act that would jeopardize the collection of taxes*

■ Finally, the Department may issue a jeopardy assessment when it determines a person owing taxes intends to "do *any other act* that would jeopardize the collection of [ ] taxes." I.C. § 6–8.1–5–3(a) (emphasis added). The Department promulgated its interpretation of this statutory language in regulation 45 IAC 15–5–8, explaining that the use of a jeopardy assessment is permissible when "the taxpayer does any other act tending to prejudice or render wholly or partly ineffective *proceedings* to compute, assess, or collect any tax levied by the state." 45 IND. ADMIN. CODE 15–5–8(a)(3) (2007) (*see* http://www. in.gov/legislative/iac/) (emphasis added).[12]

First, the Department designated all of the jeopardy assessment Investigation Summaries, each of which stated in the Explanations of Adjustments that the Department *deemed* the Garwoods' actions to have jeopardized the collection of taxes. (*See, e.g.,* Resp't Des'g Evid. Ex. K, Ex. 4B

---

12. The Department explains that it refers to the Internal Revenue Service's (IRS) jeopardy assessment manual to determine which activities satisfy the "any other act" requirement of Indiana Code § 6–8.1–5–3. (*See* Resp't Mem. at 16–17.) Reliance on IRS guidelines is misplaced, however, because 1) Indiana Code § 6–8.1–5–3 and 45 IAC 15–5–8 provide Indiana-specific guidance, 2) the Legislature has not incorporated IRS authority into the jeopardy assessment statute, and 3) the Department has not incorporated IRS authority into its regulation. *Cf., e.g.,* I.C. § 6–8.1–5–3 *and* 45 IND. ADMIN. CODE 15–5–8 (2007) (*see* http://www.in.gov/legislative/iac/) *with* IRM 5.17.15.2.1, 2007 WL 7063015. Even if the Department's reliance on the IRS manual was

proper it failed to document or designate facts that would validate the use of a jeopardy assessment thereunder: e.g., there were no large sums of money, highly liquid assets, or illegal/underground business operations, etc. *See, e.g., Thompson v. United States,* No. 10 C 4455, 2010 WL 3893806, at *5–6 (N.D.Ill. 2010); *Wellek v. United States,* 324 F.Supp.2d 905, 907–13 (N.D.Ill.2004); *Guillaume v. Comm'r,* 290 F.Supp.2d 1349, 1353–55 (S.D.Fla.2003); *Magluta v. United States,* 952 F.Supp. 798, 801–03 (S.D.Fla.1996); *Mesher v. United States,* 736 F.Supp. 233, 234–36 (Dist.Ct.Or.1990) (all explaining whether assessments were reasonable given the presence of certain facts).

at 2, Jan. 31, 2011.) (*See also* Hr'g Tr. at 102–03, May 4, 2011; Resp't Mem. at 21.) The actions recited include, among those discussed above, the advertisement of dogs for sale in local newspapers, the breeding and sale of dogs, the failure to register as a retail merchant, the failure to prepare and file sales tax returns, and the failure to report income earned from the retail sales of animals on their individual income tax returns. (*See, e.g.,* Resp't Des'g Evid. Ex. K, Ex. 4B at 2, Jan. 31, 2011.) None of these actions alone constitute a litmus test for properly issuing a jeopardy assessment. Furthermore, taken as a whole, these actions suggest that the Garwoods were not properly reporting and paying taxes allegedly due, not that they intended not to pay, or preserve the wherewithal to pay, their taxes.[13] The absence of facts demonstrating the Garwoods' intent to thwart collection is palpable.

Next, the designated facts show the Garwoods filed annual income tax returns prepared by an income tax professional. In fact, Virginia's tax preparer included income from the sale of dogs in her 2008 income tax return. (*See* Resp't Des'g Evid. Ex. E ¶ 21, Jan. 21, 2011.) Virginia stated that because her tax preparer never told her she should be collecting sales tax on her sales of dogs, she assumed, albeit incorrectly, that her sales of dogs, like her sales of livestock, were exempt from sales tax. (*See* Petrs' Des'g Evid. Vol. 1, Ex. A ¶ 7.) While, the Garwoods' reliance on a tax specialist does not relieve them of per-

sonal responsibility to get their taxes right,[14] it does not indicate their intent to thwart the tax system and circumvent the collection of taxes through regular proceedings. Thus, this is not a basis for the Department's use of jeopardy assessments in this case.

The Court holds that the Department did not show the presence of the statutorily prescribed exigent circumstances that the Garwoods' intended to quickly leave the state, remove their property from the state, conceal their property in the state, or do any other act that would jeopardize the collection of taxes. The Court's holding is consistent with the Indiana Supreme Court's explanation of the contours of jeopardy assessments. *See generally, e.g., Indiana Dep't of State Revenue v. Adams,* 762 N.E.2d 728, 730–33 (Ind.2002); *Adams,* 762 N.E.2d at 740–46; *Bryant v. State,* 660 N.E.2d 290, 295–300 (Ind.1995); *Clifft,* 660 N.E.2d at 313–19. Indeed, in distinguishing the State's power to tax from its power to punish crimes, Indiana's Supreme Court explained that the power to issue jeopardy assessments "is part of the State's power of the purse, not its power of the sword[.]" *See Adams,* 762 N.E.2d at 732–33.

It cannot reasonably be inferred that the jeopardy assessment procedure was used in this case to protect the State's fiscal interests. For example, the day after the Garwoods' 240 dogs were seized, the Department sold them all to the Humane

---

**13.** The Department has regular proceedings to ensure and enforce the computation, assessment, and collection of taxes, such as auditing taxpayers to confirm or compute tax due, issuing proposed assessments if adjustments are determined, issuing demand notices if proposed assessments are unpaid or unchallenged, and filing tax warrants to enforce collection of unpaid tax due. *See generally* IND.CODE §§ 6–8.1–5–1, –4, –8–2, –3 (2007).

**14.** The Garwoods have taken responsibility for their actions, both having pled guilty to failure to collect or remit sales tax for one or more months in 2008. In addition, Virginia pled guilty to falsifying or omitting profits or losses from her sales of dogs on her 2007 through 2009 Indiana income tax returns. *See* Hr'g Tr. at 102–03, May 4, 2011; Petrs' Resp. Br. Opp'n Resp't Mot. Summ. J. (hereinafter, ("Petrs' Resp.") ¶ 17, Mar. 29, 2011.)

Society for a total of $300.00, yet logic dictates that the dogs had a value far greater than just over $1.00 each. The Department's sale of the dogs for this nominal price is in stark contrast to the Department's previous purchase of two dogs from the Garwoods for a total of $550.00 as well as its estimate that each dog's value was $300.00 in calculating the BIA assessments. (*See* Resp't Des'g Evid. Ex. BB ¶¶ 15–16, Mar. 3, 2011; Resp't Des'g Evid. Ex. E ¶¶ 13–17, Jan. 31, 2011; Resp't Des'g Evid. Ex. 11 ¶ 8, Dec. 20, 2010.) Moreover, a media circus roiled on the very day the Department and the OAG served the jeopardy assessments, jeopardy tax warrants, and seized the Garwoods' assets. Within hours of the raid, individuals from the OAG were interviewed on television and by newspapers about shutting down a "puppy mill." (*See* Petrs' Des'g Evid. Vol. 1, Ex. ¶¶ 14–15.) (*See also, e.g.,* Resp't Des'g Evid. Ex. L at 1–3, Jan. 31, 2011.) The unusual occurrence of this media hype in conjunction with the Department's sale of the Garwoods' property for a nominal sum demonstrate that the Department wielded the power of jeopardy assessments as a sword to eliminate a socially undesirable activity and close down a suspected "puppy mill," [15] not to fill the State's coffers with the tax liabilities the Garwoods purportedly owed.

Jeopardy assessments are a powerful collection tool that, when properly used,

further the important state interest of collecting state tax revenue needed to pay for critical governmental services and conducting the business of the state. The designated evidence shows that the Garwoods did not remit the proper amount of tax due to the state on their sales, a fact the Garwoods have repeatedly acknowledged. Nonetheless, the Department overstepped its authority in this case by issuing jeopardy assessments without having shown the exigent circumstances required by Indiana Code § 6–8.1–5–3 and 45 IAC 15–5–8. Consequently, the Court holds that the sixteen jeopardy assessments issued to the Garwoods for all or part of the 2007 though 2009 tax years are void as a matter of law.[16]

## CONCLUSION

For all the foregoing reasons, the Court DENIES the Department's motion for summary judgment in its entirety and GRANTS summary judgment in favor of the Garwoods. The Court REMANDS the matter to the Department and ORDERS it to void all of the Garwoods' jeopardy assessments and take any other actions necessary to give full effect to this Order. The parties shall bear their own costs.

SO ORDERED.

15. *See* Petrs' Des'g Evid. Vol. 2, Ex. J at 1, 4 (article written by Andrew W. Swain, *Tax Ills Behind the Mills—the Advancement of Puppy Protection*, stating "[s]o far, using its state tax laws, Indiana has successfully closed two puppy mills and prosecuted their operators for various tax crimes") and (citing " 'Puppy Mill Busted: Dogs Taken from Harrison County Farm to New Albany Warehouse,' *Ind. Law Blog* (June 3, 2009), *available at http:// indianalawblog.com/archives/2009/06/ind_ law_puppy_m.html* (discussing the Virginia Garwood case").)

16. This holding does not preclude the use of other available tax collection methods with respect to the Garwoods. Specifically, Indiana Code § 6–8.1–5–1 provides that "[i]f the department reasonably believes that a person has not reported the proper amount of tax due, the department shall make a proposed assessment of the amount of the unpaid tax due on the basis of the best information available to [it]." IND.CODE § 6–8.1–5–1 (2007). In turn, Indiana Code § 6–8.1–5–2 details the timeframes under which such assessments may be issued.