875 N.E.2d 395 (2007)
In the Matter of J.V., C.V., D.V., and A.V., Children Alleged To Be In Need of Services,
Jose Vega, Sr. and Patty Alonzo, Appellants-Respondents,
v.
Allen County Department Of Family And Children Services, Appellee-Petitioner.
No. 02A03-0702-JV-69.
Court of Appeals of Indiana.
October 25, 2007.
*397 Richard J. Thonert, Fort Wayne, IN, Attorney for Appellants.
Sherry Hartzler, Department of Child Services, Fort Wayne, IN, Attorney for Appellee.

*396 OPINION
KIRSCH, Judge.
Jose Vega, Sr. ("Father") and Patty Alonzo ("Mother") (collectively, "Parents") appeal the trial court's determination that their children, J.V., C.V., D.V., and A.V., are children in need of services ("CHINS"). Parents raise three issues, which we restate as four issues:
I. Whether the orders entered by the trial court after the Permanency Hearing, on January 8, 2007, were final appealable orders;
II. Whether the trial court erred when it denied the Parents' Motion to Suppress;
III. Whether the trial court abused its discretion when it admitted evidence of the contents of a digital camera found at Parents' home and prior adjudications of Mother into evidence; and
IV. Whether the trial court's findings of fact and conclusions thereon are contrary to the law and the evidence.
We affirm.

FACTS AND PROCEDURAL HISTORY
At approximately 2:00 a.m. on February 19, 2006, two Fort Wayne police officers arrived at Parents' home in response to a 911 call, and Mother answered the door. They asked her if they could come in to make sure everything was fine, and she allowed them to enter. Once inside the home, the officers observed that the home was in complete darkness and that there were many empty beer bottles in the living room, as well as women's lingerie and a pair of high heels. They found Father, naked, in a bathroom adjacent to the living room. At that time, Father was handcuffed and placed on a chair in the living room. The officers proceeded to look for the children and found them in their bedrooms, which were in the direct line of sight from the living room. J.V. was observed to be wearing a green t-shirt and dark pajama bottoms.
After speaking with the children to make sure they were unharmed, the officers continued to search Parents' home. During this search, a silver digital camera was discovered on top of the washer in a bathroom located off of the master bedroom. The officers turned on the camera and observed several pictures on the display screen. There were pictures of Mother, naked, on the couch in the living room *398 in sexual poses and pictures of Mother and Father engaged in sex acts. There were also pictures of J.V. with Mother, who was naked, and in at least one of these pictures, J.V. was touching Mother in her vaginal area. The officers identified J.V. as being the boy in the pictures because he was wearing the same green t-shirt in the pictures as he was wearing when they found him in his bedroom that night. There were also pictures of Mother, who was naked, and D.V. After observing these pictures, the officers closed the camera, left it where they found it, and went back to the living room to speak with Father. They asked Father if "there was anything going on that [they] needed to be aware of," and he said no, but did tell the officers that he had been having "kinky sex" with Mother on the couch in the living room. Dec. 5, 2006 Fact-finding Tr. at 80.
The officers informed their supervisor of what they had discovered and were instructed not to take the camera. Id. at 91. The supervisor contacted the Allen County Department of Family and Children Services ("DCS"), and a report was forwarded to the agency.
On February 20, 2006, at approximately 5:00 p.m., the police returned and took the children to the Child Advocacy Center to interview them. Detective Caesar DeJesus later obtained a search warrant and went to Parents' residence and inquired about where the camera was located. Parents told him that it was located inside of a satellite box, which was in the master bathroom. Detective DeJesus found the camera, but when he turned it on, there were no pictures on the camera, and the memory card was missing. In his search of the residence, he discovered a room adjacent to the master bedroom, which contained numerous framed, nude photos of Mother and other nude photos, magazines, and sexually explicit material. Detective DeJesus was unable to locate the memory card from the camera in his search.
On February 22, 2006, a preliminary inquiry hearing was held at which the trial court authorized the filing of a Verified Petition Alleging J.V., C.V., D.V., and A.V. to be CHINS, and the children were ordered to continue in foster care placement. On March 20, 2006, DCS filed a petition alleging the children to be CHINS. This petition was based upon allegations that the children had been neglected and were victims of sexual abuse. Appellant's App. at 493-99. On May 16, 2006, Parents filed a Motion to Suppress claiming that the evidence discovered when the police initially went to Parents' home on February 19 was obtained without a warrant and was therefore inadmissible. On November 28, 2006, the trial court entered an order denying Parents' Motion to Suppress and refusing to apply the exclusionary rule to a CHINS proceeding. Id. at 40-44. A fact-finding hearing was held on the CHINS petition on December 5 and 12, 2006. The trial court entered an order on January 8, 2007 finding the children to be CHINS, and a dispositional hearing was scheduled for January 28. At the dispositional hearing, the trial court issued an order containing a parent participation plan and continuing the children in their current placement. Id. at 53-55.
Parents filed their notice of appeal on January 12, 2007, seventeen days before the dispositional hearing. Their notice of appeal specifically stated that they were appealing from the trial court's determination of CHINS on January 8, 2007. An amended notice of appeal was filed on June 18, 2007, which again stated that Parents were appealing the January 8 determination. Additional facts will be added as necessary.

*399 DISCUSSION AND DECISION

I. Final Appealable Order
Parents contend that although they brought this appeal before the dispositional hearing was held, their appeal should not be dismissed for lack of a final, appealable order. They claim that the order entered on January 8, 2007 after the permanency hearing was a final, appealable order because it continued placement of the children outside of the home and stated that placement with Parents was "contrary to the welfare of the children." Appellant's App. at 50. Because Parents' rights as to the children were determined at that time, they argue that no further dispositional hearing was necessary, and the order on January 8 was a final, appealable order.
Without deciding whether the January 8 order was in fact a final, appealable order, we will review Parents' appeal. It has been held that once a trial court determines that a child is a CHINS, the trial court is required to hold a dispositional hearing because the CHINS determination is a mere preliminary step to be taken prior to choosing among several different dispositional alternatives. Hallberg v. Hendricks County Office of Family & Children, 662 N.E.2d 639, 643 (Ind.Ct.App. 1996) (citing In re M.R., W.D., & C.J., 452 N.E.2d 1085, 1088 (Ind.Ct.App.1983)). Only after a dispositional hearing has been held is there a final, appealable order because the disposition finally determines the rights of the parties. Id.
The determination that Parents appeal here was made following the fact-finding and permanency hearings; however, a dispositional hearing was held twenty days later, from which an "Order on Dispositional Hearing" was issued. See Appellant's App. at 53-55. Therefore, we will address this appeal on the merits because a dispositional hearing was conducted, and a final appealable judgment exists. See T.Y.T. v. Allen County Div. of Family & Children, 714 N.E.2d 752, 756 n. 3 (Ind.Ct. App.1999) (addressing appeal on merits even though notice of appeal filed after CHINS determination and not after dispositional hearing because a dispositional hearing had been conducted).

II. Motion to Suppress
Parents argue that the trial court erred when it denied their motion to suppress the evidence found during the police officers' search of their home. They contend that the officers' actions on February 19, 2006 violated the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution because the officers did not have a search warrant when they viewed the pictures on the camera. Because the officers' actions violated the constitutional safeguards against unlawful search and seizure, Parents claim that any evidence discovered should have been suppressed.
Our standard of review for the denial of a motion to suppress is well settled. We review such rulings in a similar manner to other sufficiency matters. Carroll v. State, 822 N.E.2d 1083, 1085 (Ind.Ct.App. 2005). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the ruling. Id. However, unlike typical sufficiency reviews where only the evidence favorable to the judgment is considered, we must also review the uncontested evidence that is favorable to the defendant. Id.
A search of a private house is presumptively unreasonable if conducted without a warrant. Germaine v. State, 718 N.E.2d 1125, 1129 (Ind.Ct.App.1999), trans. denied. "As the purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against *400 arbitrary invasions by governmental officials, a warrant is required during civil as well as criminal investigations unless some recognized exception to the warrant requirement applies." Id. The fact that evidence was seized in violation of the Fourth Amendment, however, does not mean that the evidence will be suppressed for every purpose in every proceeding. State, Ind. Dep't of Revenue v. Adams, 762 N.E.2d 728, 730 (Ind.2002), cert. denied (citing Tirado v. Comm'r of Internal Revenue, 689 F.2d 307, 310 (2d Cir.1982), cert. denied (1983)).
"The United States Supreme Court has held that the exclusionary rule is not constitutionally mandated, but is `a judicially created means of deterring illegal searches and seizures.'" Id. (quoting Pa. Bd. of Probation & Parole v. Scott, 524 U.S. 357, 363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998)). The exclusionary rule is a judicially created prophylactic device, and it only applies to areas where its remedial objectives are thought most effectively served. Id. (citing United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1973)). It has been recognized that the rule is most effective when its deterrent benefits outweigh its substantial social costs. Id.
In Adams, our Supreme Court determined that cocaine found in an unconstitutional search by criminal authorities could be used by revenue authorities because it was concluded that the exclusionary rule was not applicable in Controlled Substance Excise Tax ("CSET") proceedings. Id. at 730. The Court reasoned that the application of the exclusionary rule to such proceedings would serve to undermine several important State interests, such as the power to tax, the loss of relevant and reliable evidence, and expedited proceedings. Id. at 731-32. Because the costs of applying the exclusionary rule to CSET proceedings were found to outweigh the limited benefits, our Supreme Court declined to apply the rule to the evidence seized in that case. Id. at 733.
Assuming without deciding that the evidence in the present case was obtained in violation of the Fourth Amendment and Article 1, Section 11, we must decide if the exclusionary rule should be applied to a CHINS proceeding. We must first determine the deterrence benefits of applying the exclusionary rule to CHINS proceedings. "`Where evidence is obtained in an allegedly illegal search in furtherance of a criminal investigation, it is generally unlikely that application of the exclusionary rule to bar the evidence in a secondary civil proceeding will deter future . . . violations.'" Id. at 731 (quoting Wolf v. Comm'r of Internal Revenue, 13 F.3d 189, 194 (6th Cir.1993)). Government agents will be deterred when the conduct at issue falls with their zone of primary interest. Id. Law enforcement officers' primary concern is the enforcement of the criminal laws, and they may have little interest in subsequent civil proceedings. Id.
As to the social costs involved, we believe that the application of the exclusionary rule to CHINS proceedings would serve to undermine several important State interests. These interests include: (1) strengthening family life by assisting parents to fulfill their parental obligations; (2) removing children from families only when it is in the child's best interest or in the best interest of public safety; (3) providing a judicial procedure that ensures fair hearings, recognizes and enforces the legal rights of children and their parents, and recognizes and enforces the accountability of children and parents; (4) promoting public safety and individual accountability by the imposition of appropriate sanctions; (5) encouraging effective reporting of suspected or known incidents *401 of child abuse or neglect; (6) providing effective child services to quickly investigate reports of child abuse or neglect; (7) providing protection for an abused or a neglected child from further abuse or neglect; and (8) providing rehabilitation services for an abused or neglected child and the child's parent, guardian, or custodian. IC XX-XX-X-X(4), (6), (10), (11); IC XX-XX-X-X(1)-(4). We therefore conclude that the costs of applying the exclusionary rule to CHINS proceedings outweigh the benefits it would have to deter illegal searches and seizures, and we decline to apply the exclusionary rule to CHINS proceedings. The trial court did not err when it denied Parents' Motion to Suppress.

III. Admission of Evidence
We review a trial court's admission of evidence for an abuse of discretion. In re Paternity of H.R.M., 864 N.E.2d 442, 445 (Ind.Ct.App.2007). An abuse of discretion will only be found when the decision is clearly erroneous or against the logic and effect of the facts and circumstances before the trial court. Id. "The fact that evidence was erroneously admitted does not automatically require reversal, and we will reverse only if we conclude the admission affected a party's substantial rights." Id. at 445-46.
Parents argue that the trial court abused its discretion when it allowed evidence relating to the digital camera, which included a photograph of the camera and testimony concerning the pictures that the officers observed on the camera, to be admitted at the fact-finding hearing. They contend that this admission of evidence violated the best evidence rule, which requires the original writing, recording, or photograph to be produced to prove the content of such unless otherwise provided in the rules or by statute. Ind. Evidence Rule 1002. They believe that the actual camera should have been produced at the hearing, so it could be shown whether there were any pictures on the camera or not.
To the extent that Parents are arguing that the admission of the photo of the camera violated the best evidence rule because the actual camera should have been admitted, they are mistaken because the best evidence rule only requires that the photograph be original and does not require admission of the object, which was the subject of the photograph.
As to the testimony of the officers regarding the pictures they observed on the camera, we conclude that the admission of this evidence was not an abuse of discretion. Although the original is required under the best evidence rule, an exception exists that allows for the admission of evidence of the contents of a writing, recording, or photograph where the original is lost or destroyed unless the proponent lost or destroyed the original in bad faith. Evid. R. 1004(1). The proponent of the evidence must demonstrate that the original was lost or destroyed by showing that a diligent but unsuccessful search has been made in the place or places where the original was most likely to be found. Cua v. Ramos, 433 N.E.2d 745, 753 (Ind.1982).
Here, the police officers observed the pictures on the digital camera on February 19. They testified that they saw the pictures and the memory card on that night when they were in Parents' home. They left the camera at the residence where they found it. When Detective DeJesus returned on February 20 with a search warrant, he asked Parents where the camera was located, and they told him it could be found in the master bathroom inside of a satellite box. Detective DeJesus found the camera, but it no longer contained any photographs, and the memory card was missing. He then searched the residence *402 for the memory card, but was unable to locate it. The evidence showed that the officers made a diligent search for the photos and memory card, and were unable to find them in the place where they were most likely to be found, Parents' residence. Therefore, the original photographs were not required, and the trial court did not abuse its discretion is allowing the evidence relating to the photographs to be admitted.
Parents also argue that the trial court abused its discretion when it allowed evidence of Mother's prior adjudications relating to the involuntary termination of her parental rights to her other children to be introduced at the fact-finding hearing. "A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record." Davis v. State, 835 N.E.2d 1102, 1113 (Ind.Ct.App.2005), trans. denied (2006); see also Ind. Appellate Rule 46(A)(8). We conclude that Parents have waived this argument for failure to provide adequate citation to authority.

IV. Findings and Conclusions
Because the trial court entered findings of fact and conclusions thereon, we apply a two-tiered standard of review. In re V.C., 867 N.E.2d 167, 179 (Ind.Ct. App.2007). We first determine whether the evidence supports the findings, and then we determine whether the findings support the conclusions. Id. We will only reverse if the evidence does not support the findings or the findings do not support the judgment. Id. In our review, we consider only the evidence favorable to the trial court's judgment, and we do not reweigh the evidence or reassess the credibility of the witnesses. Id.
IC XX-XX-X-X provides that a child under eighteen years old is a CHINS if:
(1) the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian; and
(2) the child needs care, treatment, or rehabilitation that the child:
(A) is not receiving; and
(B) is unlikely to be provided or accepted without the coercive intervention of the court.
DCS has the burden of proving by a preponderance of the evidence that the children were CHINS.[1]See IC XX-XX-XX-X.
Parents argue that there was insufficient evidence to support several of the trial court's findings of fact. They specifically contend that DCS failed to present evidence that they engaged in sexual relations on the couch on the night of February 19, 2006 or that the children saw Parents on the living room couch that night. They also claim that there was no evidence as to why lingerie in the living room after 2:00 a.m. could constitute lack of supervision for their children. Parents also argue that the evidence and findings failed to support the trial court's determination that the children were CHINS. We disagree.
As to Parents' contention regarding lack of evidence of sexual relations on the couch, evidence was presented that Father told the police that he and Mother had *403 engaged in "kinky sex" prior to the officers' arrival, Dec. 5, 2006 Fact-finding Tr. at 80; therefore, the evidence did support a finding that Parents had sexual relations on the couch that night. Additionally, the trial court did not make a finding that the children saw Parents having sexual relations on the night in question, only that the children could have seen them because the couch was within sight of their bedrooms. Appellant's App. at 46. Regarding the finding that Parents were not providing appropriate supervision of the children because they left lingerie in the living room, the evidence showed that several items of sexy lingerie were observed in the living room, that Father was found naked, and that he admitted that they were engaged in "kinky sex" on the couch. Dec. 5, 2006 Fact-finding Tr. at 80. Therefore, it was not just the presence of the lingerie that showed a lack of supervision, but the accumulation of evidence as to why the lingerie was there that demonstrated such.
Moreover, we believe that the evidence and the findings support the trial court's determination that the children were CHINS. Evidence was presented that the police officers arrived at Parents' residence on February 19, 2006 in response to a 911 call. When they arrived, Mother allowed them into the residence to make sure everything was fine. Once inside, the officers observed women's lingerie, high heels, and many empty beer bottles in the living room. When they spoke to Father, he admitted that he and Mother had been engaged in "kinky sex" on the couch in the living room, which the officers observed was within sight of the children's bedrooms. The officers also discovered a digital camera that contained pictures of Mother, naked, on the couch in the living room in sexual poses and pictures of Mother and Father engaged in sex acts. There were also pictures of J.V. with Mother, who was naked, and in at least one of these pictures, J.V. was touching Mother in her vaginal area. There were also naked pictures of Mother with D.V., and he was giving the thumbs up sign to whoever was taking the picture. The evidence also showed that Mother had a long history of involvement with DCS beginning in 1987, that she did not complete or benefit from the services provided to her by DCS, and that her parental rights to four other children had been previously involuntarily terminated. Sufficient evidence was presented to support the trial court's determination that the children were CHINS.
Affirmed.
ROBB, J., and BARNES, J., concur.
NOTES
[1] Parents contend that DCS was required to prove the findings that related to alleged sexual abuse by the standard of beyond a reasonable doubt. IC XX-XX-XX-X states that "[a] finding by a juvenile court that a child committed a delinquent act, or that an adult committed a crime must be based upon proof beyond a reasonable doubt." The present case only determined that the children were CHINS and did not determine if Parents committed any criminal act. The trial court only made a civil determination, and such a determination must be based upon a preponderance of the evidence. IC XX-XX-XX-X.