**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**JOEL C. WEINEKE**
Weineke Law Office, LLC
Plainfield, Indiana

**CARA SCHAEFER WIENEKE**
Special Assistant to the State Public Defender
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT HENKE**
**KARRIE MCCLUNG**
**CHRISTINE REDELMAN**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE MATTER OF A.R., et al.,      )
ALLEGED CHILDREN IN NEED               )
OF SERVICES:                           )
                                       )
T.M., (Mother),                        )
                                       )
    Appellant- Respondent,        )
                                       )
      vs.               )   No.  52A02-1205-JC-388
                                       )
THE INDIANA DEPARTMENT OF              )
CHILD SERVICES,                        )
                                       )
    Appellee-Petitioner.          )

APPEAL FROM THE MIAMI CIRCUIT COURT
The Honorable Robert Spahr, Judge
Cause Nos. 52C01-1111-JC-59
52C01-1111-JC-60
52C01-1111-JC-61
52C01-1111-JC-62

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Case Summary and Issue

T.C. ("Mother") appeals from the juvenile court's order finding that each of her four children was a child in need of services ("CHINS") under Indiana Code section 31-34-1-1. Mother raises one issue on appeal, which we restate as whether the evidence supported the findings and the findings supported the judgment of the juvenile court. Concluding that the findings and judgment of the juvenile court were proper, we affirm.

Facts and Procedural History

Mother has four children,[1] who were all five years old or younger at the time of the fact-finding hearing in question, which was split between February and April of 2012. The father of the children was in jail at the time. The Indiana Department of Child Services ("DCS") became involved in this particular instance in May of 2011, following receipt of a report regarding one of the children testing positive for marijuana at birth. However, DCS had been involved with Mother and her children previous to this case. There had previously been allegations of lack of supervision in 2007 and 2010, medical neglect in 2007, and a drug-exposed infant in 2008.

---

[1] It appears from the record that Mother may have more than four children, but that four of her children were living with her at the times relevant to this case, and the proceedings here were directed at just four of her children.

In this instance, Mother agreed to an informal adjustment with services including outpatient drug treatment and home-based parenting classes.[2] In September 2011, DCS received a report regarding sub-standard conditions at Mother's home. The record indicates that Mother cooperated with the informal adjustment initially, but then began to fail to fully and consistently participate in services, and became difficult for her family case manager to contact. Mother was discharged from outpatient substance abuse therapy for failure to participate. DCS attempted to work with Mother and offer more home-based services as well as allow her to come to the office for weekly drug tests on a day of her choosing. Thereafter, it appears that Mother's cooperation and communication with DCS declined precipitously. Mother moved around and did not provide DCS with her changes in address, and did not answer her phone when she had one or return DCS's phone calls. Mother also claimed to be working, but would not give DCS her employer contact information. It appears that her case manager eventually had to physically go to the school of one of Mother's children in order to talk to Mother.

In February of 2012, Mother tested positive for methamphetamines and THC following an oral swab test, and then also tested positive for methamphetamines via a hair sample test.[3] Following these positive tests, the children were removed from Mother's home and were sent to live with a relative, and a CHINS petition was filed. At the dispositional

---

[2] An informal adjustment is an agreement between DCS and a family where the family agrees to participate in services in an effort to prevent the children from being formally deemed CHINS. See Ind. Code §§ 31-34-8-1 to -7. The program may be implemented by an intake officer after a preliminary inquiry and upon court approval, if the officer has probable cause to believe that the child is a CHINS. Id.

[3] Mother had previously tested positive for THC in May of 2011, and for hydrocodone in November

hearing following the fact-finding hearing, the juvenile court adopted recommendations regarding services that Mother would participate in, and ordered that the children were to remain at the relative's home while Mother worked on completing services. Additional facts will be supplied as needed.

## Discussion and Decision

### I. Standard of Review

When, as here, the juvenile court enters findings of fact and conclusions of law in a CHINS determination, we apply a two-tiered standard of review. In re J.V., 875 N.E.2d 395, 402 (Ind. Ct. App. 2007), trans. denied. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. Id. In making this determination, we do not reweigh the evidence or reassess witness credibility. Id. We will reverse only if, considering the evidence favorable to the juvenile court's judgment, the evidence does not support the findings or the findings do not support the judgment. Id.

### II. Children in Need of Services

The juvenile court found that Mother's children were CHINS pursuant to Indiana Code section 31-34-1-1, which states that:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

of 2011; Mother claimed that she had a prescription for the hydrocodone.

(2) the child needs care, treatment, or rehabilitation that:
　　　　(A) the child is not receiving; and
　　　　(B) is unlikely to be provided or accepted without the coercive intervention of the court.

Thus the statute has two prongs—the first is that the child must be endangered, and the second is that the child will not receive needed care without the court's intervention. Mother claims that the first prong was not met in this case. The juvenile court issued findings of fact following the fact-finding hearing, and found that:

1. Parents' statements against interest admitting that children were in the presence of parents who used marijuana;
2. Mother's test results using both oral swab test and hair specimen test were positive for methamphetamine in February, 2012;
3. Mother's continual lack of cooperation and resistance to DCS services, stating it was "just weed;"
4. Mother keeps changing address, and Court does not find her credible on subject of where she is currently living;
5. Combination of neglect and refusal on Mother's part to ensure children are properly cared for and supervised.

Appellant's Appendix at 69 (findings were not numbered in the juvenile court's order, but have been numbered here for clarity). Mother argues that the first two findings are not supported by the evidence, and that the second two findings do not alone establish the first prong of the statute. Mother completely omits the fifth finding from her brief.

We agree with Mother that the first finding, as stated, is not supported by the evidence. The record shows that there was testimony regarding drug use by the parents during the time in question, but there was no testimony that drugs were ever used in the presence of the children or while the children were under the parents' care. Case law supports the proposition that drug use alone will not generally meet the first prong of the

5

statute, where that use was not in the presence of the child in question or while the user was caring for the child. White v. State, 547 N.E.2d 831, 836 (Ind. 1989) (concluding that "the knowing exposure of a dependent to an environment of illegal drug use poses an actual and appreciable danger to that dependent and thereby constitutes neglect regarding the endangerment requirement of the offense," in a case where the appellant provided his daughter with marijuana and smoked it with her, the daughter observed him smoking marijuana and intravenously injecting a white substance, and the daughter found hypodermic needles stashed in the kitchen.); Perrine v. Marion Cnty. Office of Child Servs., 866 N.E.2d 269, 277 (Ind. Ct. App. 2007) ("The mere presence of drug paraphernalia in a bag in the residence is insufficient to support a finding of neglect under Indiana Code Section 31-34-1-1."); C.A. Bean v. State, 818 N.E.2d 148, 152 n.3 (Ind. Ct. App. 2004) ("[W]e note that it is not the possession of illegal drugs in the presence of children that endangers them but rather the illegal use of drugs or dealing in illegal drugs which has been found to endanger children when done in their presence.") (emphasis in original); cf. In re J.L., 919 N.E.2d 561, 564 (Ind. Ct. App. 2009) (concluding that the child was a CHINS where the mother used drugs while the child was asleep in another room but under her care and custody and thus "that Mother knowingly exposed [the child] to an environment of illegal drug use, which resulted in endangering [the child]'s physical or mental condition as the thirteen-month-old child was left without any responsible adult care and supervision."). Thus we agree with Mother that the evidence does not support this finding.

Mother next invites us to review the drug test results de novo, claiming that that finding was based solely on a paper record. However, Mother fails to recognize that there was also important witness testimony and Mother's own testimony regarding the tests and their results. As stated above, we do not reweigh the evidence or reassess witness credibility. We also note that the burden of proof needed to support these findings is a preponderance of the evidence. Ind. Code § 31-34-12-3. DCS argues that the White case cited above stands for the proposition that drug use alone is a sufficient reason to find that the children were CHINS, but DCS misreads the case because in White, the parent in question used drugs in the presence of the child, and even offered drugs to and used drugs with the child. White, 547 N.E.2d at 836. DCS further argues that lack of cooperation is sufficient to find that a child is a CHINS if that lack of cooperation occurs during an informal adjustment. But DCS provides no basis for that claim, nor can we find support for such a claim within the statute or case law. An informal adjustment is a way for a parent to avoid a CHINS proceeding if the parent cooperates with DCS without a hearing; it is not a pathway by which a child can be found to be a CHINS based on a less stringent standard than the CHINS statute requires, should the informal adjustment not work out. The CHINS statute provides requirements that must be met in order for a child to be adjudicated a CHINS, regardless of whether an informal adjustment was attempted first. We conclude that there was evidence to support this finding, but that this finding alone does not support the judgment of the juvenile court regarding the first prong of the statute, because there was no evidence in the record

7

correlating Mother's drug use to times when the children were present or under Mother's care.

The fifth finding of the juvenile court, which Mother does not discuss in her brief, is that there was a combination of neglect and refusal on Mother's part to ensure that the children were properly cared for and supervised. Considering only the evidence most favorable to the juvenile court's judgment, we conclude that there was evidence to support this finding, and that this finding, in conjunction with finding number two that Mother tested positive for drugs, does support the court's judgment. A DCS predispositional report, which was submitted into evidence during the fact-finding hearing without objection, noted that two of Mother's children had tested positive for drugs at birth, that DCS had been called to Mother's home to investigate sub-standard conditions apparently during the informal adjustment period, and that there had been previous substantiated allegations of lack of supervision and medical neglect. Combined with Mother's apparent ongoing drug use, we conclude that there was evidence to support the first prong of the statute.

Mother argues that findings three and four of the juvenile court do not support the first prong of the statute, but does not argue that they do not support the second prong of the statute or that there was no evidence to support those findings. Having concluded above that the first prong of the statute has been met, we conclude that findings three and four support the second prong of the statute, and that there was ample evidence to support those findings. It seems clear that without court intervention, Mother will not cooperate with DCS to address her substance abuse and parenting issues.

8

<u>Conclusion</u>

Concluding that there was evidence to support four out of five of the juvenile court's findings, and that those four findings together support the judgment of the court pursuant to both prongs of the relevant statute, we affirm.

Affirmed.

MAY, J., and PYLE, J., concur.